# CHARLESTON.          .

STATE v. MITCHELL.

Submited  January 27, 1900.—Decided April 7, 1900.

1. POLLUTING WATER COURSE—*Offense—Sawdust.*
    Casting sawdust into a brook from the operation of a
    sawmill does not constitute an offense under section 20*b*,
    chapter 150, Code 1891. (p. 791).

2. INDICTMENT—*Sufficiency Of.*
    Though generally sufficient to charge in an indictment an
    offense in the words of a statute, yet if this does not suffi-
    ciently define the particular wrongful act, and give notice
    to the defendant of the offense he is required to meet,—
    the particular criminal act in its eesentials—the statute words
    must be expanded by such specification of the essentials as
    will define the offense with particularity. (p. 792).

Error to Circuit Court, Braxton County.

T. M. Mitchell was convicted of polluting a water course,
and brings error.

                                    *Reversed.*

JAMES E. CUTLIP, for plaintiff in error.

ATT'Y GEN. EDGAR P. RUCKER and D. J. F. STROTHER,
for the State.

BRANNON, JUDGE:

Mitchell was fined by the circuit court of Braxton
County and brings his case to this Court.  The indict-
ment charges that he "did knowingly, willfully, and un-
lawfully throw and cause to be thrown into a certain brook
and branch of running water (describing the brook or
branch), the said brook and branch then and there being
used for domestic purposes, putrid, nauseous, and offen-
sive substance, to wit, sawdust, and the offal and refuse
from a certain sawmill, and other putrid, nauseous, and
offensive substance." Should the demurrer to the indict-
ment have been sustained? Does it charge an indictable

offense? Is sawdust a putrid, nauseous, or offensive substance? The indictment alleges that it is, and therefore it may be said that, on demurrer, it ought to be taken to be so; but if we can, by judicial notice, say that it is not so, the allegation that it is will not make it so. "If a fact which the court will take judicial notice of be erroneously pleaded, a demurrer does not admit such erroneous statement of fact, but the party filing the demurrer will be entitled to the advantage of the fact, as the court will judicially notice it." 11 Am. & Eng. Enc. Law (2d Ed.) 489, note 4. We know that sawdust is a clean substance, coming from the sawing of logs, not putrid, not nauseous, not offensive, even when it has become somewhat decayed, lying in large quantity. The indictment says it is otherwise, but our common knowledge of it denies this. "Courts will understand words in general use in the same sense in which they are usually understood by masses of men, and no allegation or proof of such meaning is necessary." *Edwards* v. *Society*, (Cal.) 34 Pac. 128, 37 Am. St. Rep. 70. "In fact, in the case of phrases, and words, too, the criterion is, as it is everywhere throughout this subject of judicial notice, common knowledge or general notoriety." "Courts will judicially take notice, without proof, of whatever ought to be generally known, within the limits of their jurisdiction." *Lanfear* v. *Mestier*, 89 Am. Dec. 658, and note, 692. If an indictment charge that one, without license, sold water or oil, charging it to be intoxicating, I take it that a court would say it was not intoxicating, and would not go through a trial to hear evidence on the subject. The statute on which this prosecution rests is found in Code 1891, chapter 150, section 20*b*: "If any person shall knowingly and willfully throw or cause to be thrown into any well, cistern, spring, brook or branch of running water which is used for domestic purposes, any dead animal carcass, or part thereof, or any putrid, nauseous or offensive substance, he shall be guilty of a misdemeanor, and upon conviction thereof, shall be fined not less than five dollars nor more than one hundred dollars, and may, at the discretion of the jury, be confined in jail not exceeding ninety days." This statute prohibits the casting into a well, cistern, spring, or

brook used for domestic purposes any dead animal, or putrid, nauseous, or offensive substance. The mention of dead animal and carcass indicates the general nature or kind of the thing deposited that was in the mind of the lawmaker. I think it was meant to prohibit such things of that general character as vitiate or render nauseous or offensive water used by human beings, not a thing like sawdust, which merely discolors water, and imparts to it a woody taste, but does not certainly make it nauseous and offensive. The words "dead body" and "carcass" are specified, and it is a rule of very considerable force in the construction of statutes that, "when there are general words following particular and specific words, the former must be confined to things of the same kind." Suth. St. Const. § 268. It may be asked, would not the deposit of sawdust in a spring or well be a wrongful act? It would, and would sustain a civil action; but it is no crime. Observe, the statute does not say that everything and anything that will to any extent deteriorate or vitiate water used for domestic purposes, cast therein, will be indictable. It only says that it shall be indictable to cast in water those substances that are in themselves putrid, nauseous, or offensive. They must have that essential quality. It is clearly the subject of a civil action for one riparian owner to put sawdust into a stream so that it passes and lodges upon the land of a lower riparian owner, or discolors the water so that it is unfit for domestic use, including the watering of stock. Such other riparian owner may prevent it by injunction. A number of authorities hold that the party may, in the use of a mill in a reasonable manner, discharge sawdust and waste into the stream in the ordinary course of using his mill, and that he is not bound to prevent them from going into the stream. 28 Am. & Eng. Enc. Law, (1st Ed.) 974, note; Gould, Waters, 433; Ang. Water Courses, section 140d. But the authorities seem to me, on the whole, to sustain the position that a riparian owner, who, by casting sawdust into a stream, injures one lower down the stream,—substantially injures him,—can be enjoined from so doing, or sued for damages for so doing. *Mills Co.*v. *Smith,* (Miss.) 30. Am. St. Rep. 546, and full note (s. c. 11 South. 26). But

the question before us is, is it a crime? Here certain legal principles come in. If a crime, it is a new crime, in derogation of right under the common law, and therefore the statute is to be strictly construed, and the case must clearly fall within the statute. Bish. St. Crimes, § 119; Bish. Cr. Law, § 196. Penal statutes "are to reach no further than their words. No person is to be made subject to them by implication, and all doubts concerning their interpretation are to preponderate in favor of the accused." Bish. St. Crimes, § 194. "If a penal statute is susceptible of two constructions, the court will give to it that which is more favorable to the defendant; in other words, penal statutes are to be taken strictly and literally, and cannot be extended by construction. Otherwise stated, the rule is that criminal statutes are inelastic and cannot be extended to cover cases not within the letter, though they may be within the reason and policy, of the law. There can be no constructive violation of a penal statute." 1 McClain, Cr. Law, § 83. "A statute which awards a penalty not known to the common law, and is in a high degree penal, will be limited to such cases as are clearly within its terms." *Com.* v. *Phillips*, 11 Pick. 27; *Com.* v. *Martin*, 130 Mass. 465. This statute imposes imprisonment, and is highly penal, imposing loss of liberty and odium; and I may reasonably ask, did the legislature intend to visit this severity of punishment in every instance of casting sawdust into streams,—a practice so long prevalent in this State? As they knew of this practice, it seems to me they would have made it plainer, if so designed. If so, they have not provided punishment for casting sawdust into the rivers, creeks, and streams: for section 20c., chapter 150. Code 1891, does not prohibit the casting of sawdust into them. The words "offal" and "refuse" do not help the indictment, as the indictment imports nothing more than those things coming from the operation of the mill in the ordinary way. The last clause, "and other putrid, nauseous, and offensive substances," does not help the indictment, because there is no specification of the particular substances. Though it is generally sufficient to follow the very words of the statute, "not unfrequently other rules will require it to be expanded be-

yond the statutory terms. It must fully state the offense and, if this cannot be done in the mere statutory words, it must be expanded beyond them." Thus, where a statute prohibits the sale of rum, brandy, whiskey, or "other spirituous liquors," such words alone will not be sufficient, according to Bish. Cr. Proc. § 623. So, I think, the indictment shows no offense.

But, if I be wrong in this, the evidence shows no offense. It does not show that this brook was used for domestic purposes. The fact that the statute uses the words, "well, cistern and spring," in immediate connection with "brook or branch," indicates that the legislature meant that the brook must be used for household purposes, and it is not shown that it was so used. And, furthermore, the evidence does not prove that sawdust is putrid, nauseous, or offensive. The most the evidence does show is that in time of drought the sawdust discolors and produces an apparent ooze, not in that brook, but in Wolf creek, and that cattle sometimes would not drink the water in that creek. Now, the statute does not punish for throwing into a brook things that, by consequence, foul a creek into which it runs. That is not the offense created by the statute. As said above, there is no statute denouncing as a crime the act of throwing sawdust into a creek, or of fouling the water of a creek by sawdust, though section 20c makes it a crime to foul a creek by the deposit in it of other things. Therefore, I think, the motion for a new trial should have been sustained. Judgment reversed, verdict set aside, demurrer sustained, and indictment quashed.

*Reversed.*