# CHARLESTON

State v. Lett.

Submitted February 18, 1908.    Decided February 25, 1908.

1. Weapons—*Carrying Weapons—Evidence.*

An indictment charges that the defendant carried "a certain revolver or other pistol, dirk, bowie knife, razor, slung shot, billy, metallic or other false knuckles and other dangerous and deadly weapons." The evidence shows that the defendant carrid a "black jack," and does not prove its dangerous or deadly character. The defendant's conviction is erroneous. (p. 666.)

2. Same—*Indictment—Evidence.*

Where a person carries about his person a dangerous or deadly weapon not specified in Code, chapter 148, section 7, the indictment must name the weapon, and allege it to be a dangerous, or deadly weapon, and the proof must show it to be such. (p. 666.)

Error to Circuit Court, Wayne County.

Elza Lett was convicted of carrying a concealed weapon, and brings error.

*Reversed.*

Wyatt & Graham, for plaintiff in error.

Clarke W. May, Attorney-General, for the State.

Brannon, Judge:

An indictment against Elza Lett charged that he did "unlawfully carry about his person a certain revolver or other pistol, dirk, bowie knife, razor, slung shot, billy, metallic or other false knuckles and other dangerous and deadly weapons." Lett waived a jury, and the court tried the case upon agreed facts, and found him guilty, and imposed fine and jail imprisonment upon him. The facts agreed were: "That the defendant Elza Lett on the 20th day of December, 1905, was a duly appointed police officer of the city of Kenova, Wayne county, West Virginia, and on said date while acting in the discharge of his duties as such officer in said city and county did carry about his person a black jack, which was all the facts before the court upon the trial of this case."

What is a "black jack"?    We do not know it by judicial

cognizance. It is not named as a prohibited weapon in the Code, chapter 148, section 7. No evidence gives us the slightest information to answer this question. That statute names certain specific weapons. As to them there need be no averment or evidence as to their dangerous or deadly character, because the statute itself brands them as dangerous and deadly; but as to weapons not so named the indictment should, besides naming them, allege that they are dangerous and deadly, because it prohibits only dangerous and deadly weapons, and when after naming some. it says " or any other dangerous or deadly weapon of like kind," it means like in kind in the respect that they are dangerous or deadly. This latter clause is too general to allow a weapon not specified in the statute, without specifying it. In such case not only should the indictment make such allegation, but it must be proven. The statute does not name a black jack as such a weapon, nor do the facts show anything of its character. The facts show that Lett carried a black jack; but the indictment does not so charge, but charges that he carried other weapons, and there is a variance between indictment and facts agreed, unless we can say judicially that a "black jack" is a billy, and thus fit it to the indictment which does allege the carrying of a billy. This is the State's claim. It would be a stretch of judicial cognizance to say that a black jack is a billy. If the indictment had charged the carrying "a billy of that kind commonly called and known as a black jack," there would be something in the claim of the State for a conviction, because the indictment does not specify a billy. Or if the charge were that he carried a " black jack, the same being a dangerous and deadly weapon," there would be some ground to support the conviction. The attorney-general admits that he cannot find " black jack" judicially defined in the books. He says that the Century Dictionary defines it as a small bludgeon, and it defines "billy" as a short bludgeon, a policeman's club. " Bludgeon" is defined as " a short club commonly loaded at one end, or bigger at one end than the other; used as a weapon." Therefore, he argues that a billy and black jack are synonymous. This process of proving that a black jack is a billy is inconclusive, but though correct, is a court to know these things without proof? Is a court to know by judicial cognizance,

·without proof, the meaning of every article named and de-
·fined in a dictionary? This is not to say that there are not
some words of such common and uniform meaning as to be
so judicially known. The words "alcohol" and "whiskey"
would likely import intoxicating drink, without allegation
or proof; but would this be the case with "bitters?" Though
the case is plain and needs no authority, it may be not out-
of place to quote for future use some authority. "When
the offense charged is the exhibition of any of the gaming
tables enumerated, *nothing more need be averred*, for the
statute makes exhibiting of any gaming table a penal of-
fense; and therefore the offense is sufficiently described by
the name set forth in the statute, and no further description
is necessary; being one of the enumerated games, the exhi-
bition of it is unlawful. When the offense is for keeping
and exhibiting a game not enumerated there must be some
averment showing it to be one of the unequal games belong-
ing to the same class with the enumerated games." *Huff*
v. *Com.*, 14 Grat. 648. "Though generallly sufficient to
charge in an indictment an offense in the words of a statute,.
yet if this does not sufficiently define the particular wrong-
ful act and give notice to the defendant of the offense he is
required to meet—the particular criminal act in its essentials
—the statute words must be expanded by such specifications
of the essentials as will define the offense with particularity."
*State* v. *Mitchell*, 47 W. Va. 789. "This indictment is.
manifestly inadequate to sustain a conviction for felony
under the claim of the section last referred to. It fails to
charge that the weapons with which the defendant made the
assault were 'Deadly.' Neither does the name given to them
import that they were such. They are simply described as.
·'Wooden clubs.' To warrant a conviction under this sec-
tion, it is necessary that the assault be made with a deadly
weapon, or with some other instrument or thing fitted to
occasion death in the use to which it was put. If it be a
weapon the ordinary name of which, *ex vi termini*, imports.
its deadly character e. g. a sword, gun or pistol, it would be
sufficient to describe it by such name, but in other ·cases the
instrument, or thing used, should be described and charged
to be deadly." *Kruger* v. *State*, 1 Neb. 365. ; "The infor-
mation charged the offense to have been committed with a

pole, alleged to be a deadly weapon, and the proof showed it to be 'a black jack fence pole used as a rail.' *Held*, that whether or not the weapon was in fact a deadly one is a matter of proof, and depends in some cases upon its use, or the manner of its use, and, therefore, this conviction cannot stand, because there is no proof of the deadly character of the weapon." *Wilson* v. *State*, 15 Texas, App. 150. "It must be a dangerous weapon *per se*, such as bowie knife, pistol, etc., and it must affirmatively appear upon the face of the indictment itself. If it does not, it is bad and cannot support a conviction." *State* v. *Nelson*, 58 Am. Rep. 202.

For these reasons we reverse the judgment, and render judgment here finding the defendant not guilty, and that he be discharged from the indictment, and go free thereof without day.

*Reversed.*