STATE OF WEST VIRGINIA *ex rel.* DON HUBBARD

*v.*

GEORGE L. SPILLERS, *Judge of the
Intermediate Court of Ohio County, West Virginia, and*

LOUIS J. JOHN, *Prosecuting Attorney
of Ohio County, West Virginia*

(No. 13432)

Submitted January 8, 1974.    Decided February 5, 1974.

*McCamic, McCamic & Hazlett, Jolyon W. McCamic* for relator.

*Chauncey H. Browning, Jr.,* Attorney General, *Richard E. Hardison,* Deputy Attorney General, *Betty L. Caplan,* Assistant Attorney General for respondents.

SPROUSE, JUSTICE:

In this proceeding in prohibition, the relator, Don Hubbard, seeks to prohibit George L. Spillers, Judge of the Intermediate Court of Ohio County, and Louis J. John, the Prosecuting Attorney of Ohio County, from proceeding to try the relator under an indictment returned by the grand jury of Ohio County on September 10, 1973. The indictment charges that the relator "did unlawfully and feloniously deliver unto T. Ramage, a certain quantity of a Schedule I Controlled Substance, to-wit, a certain quantity of hashish." Hubbard contends that the indictment fails to charge him with any crime.

The "Uniform Controlled Substances Act" is contained in Chapter 60A of the Code of West Virginia, 1931, as amended. Under appropriate provisions of the Chapter, the sale of controlled substances is prohibited under stated circumstances, and the violation of the Act in certain instances is a felony. In Article 2 of Chapter 60A, the substances regulated are categorized by five different schedules.

Schedule I is contained in Chapter 60A, Article 2, Section 204 and, in pertinent part, is as follows:

"(d) Any material, compound, mixture, or preparation which contains any quantity of the following hallucinogenic substances, * * * :

\* \* \*

"(10) Marihuana;

"(17) Tetrahydrocannabinols."

Marihuana is defined in 60A-1-101 (n) as follows:

"(n) 'Marihuana' means all parts of the plant 'Cannabis sativa L.,' whether growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds, or resin. It does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of the plant which is incapable of germination."

The deposition of a chemist for the West Virginia Department of Public Safety was taken in connection with this proceeding. The witness, among other things, said: "Hashish is an extract of marijuana comprised mostly of the fibrous hairs of the marijuana plant, which in turn are coated with the resin of the marijuana plant." The witness was shown the definition of marihuana contained in Code, 1931, 60A-1-101 (n), as amended, and was asked:

"Q Now, the resin that is mentioned in this definition, is that the same resin that you a moment ago mentioned as making up hashish?

"A Yes, it is.

"Q Are you familiar with an ingredient known as tetrahydrocannabinol?

"A Yes, I am.

"Q Also known as THC? Could you explain what that is?

"A  THC is an active ingredient in marijuana which produces hallucinogenic effects of marijuana.

"Q  Is THC also found in hashish?

"A  Yes, it is.

"Q  Would you find more of the THC in hashish than you would in ordinary marijuana?

"A  Yes, there is more—generally, there is more in hashish since it is a concentrated form of the resinous material."

This testimony was uncontradicted. It established that hashish is either a "material, compound, mixture, or preparation of marihuana." With the benefit of the chemist's testimony, it is apparent both from the general words of Code, 1931, 60A-2-204 (d), as amended, as well as from the definition of marihuana contained in Code, 1931, 60A-1-101 (n), as amended, that hashish is a Schedule I Controlled Substance.

A determination that the sale of hashish is a statutory crime, however, is not dispositive of the issue raised in this proceeding. Marihuana is specifically listed in Schedule I, but hashish is not. It is not necessary to resort to extrinsic evidence to show that the sale of marihuana is violative of the statute. Although hashish is not specifically listed, extrinsic evidence readily demonstrates that it is a controlled substance by definition. The indictment alleges that the relator delivered "a certain quantity of a Schedule I Controlled Substance, to-wit, a certain quantity of hashish." The precise question on this appeal is whether this bare allegation is a sufficient description of the offense to charge the relator with a crime, or whether the indictment must allege facts showing that hashish is a Schedule I substance by definition.

Despite many earlier contrary decisions in other jurisdictions, "the modern rule [is] that in charging a statutory offense it is not necessary to use the exact words

of the statute. An indictment or information for such an offense is sufficient if it follows the language of the statute substantially or charges the offense in equivalent words or others of the same import, if the defendant is thereby fully informed of the particular offense charged, * * * ." 41 AM. JUR. 2d, *Indictments and Informations,* Section 90, page 934. The latter part of this rule, of course, has always been a part of our basic law, *i.e.,* a defendant "shall be fully and plainly informed of the character and cause of the accusation." Section 14, Article III, Constitution of West Virginia.

"The general rule is that the charge should be so laid in the indictment or information as to bring the case precisely within the description of the offense as given in the statute, alleging distinctly all the material facts and circumstances necessary to constitute the essential requisites of the offense." 42 C.J.S., *Indictments and Informations,* Section 137, page 1032.

A close question is presented by the language in the indictment under consideration. A majority of my colleagues feel, however, that the answer is controlled by precedent established primarily in two cases.

In *Huff v. Commonwealth,* 55 Va. (14 Gratt.) 648, the offense charged by the presentment was keeping and exhibiting an unlawful game called "chuckaluck". The statute creating the offense listed specific gaming tables, the possession of which was a crime; chuckaluck was not listed. The Court said: "Where the offence charged is for keeping and exhibiting a game not enumerated, there must be some averment showing it to be one of the unequal games belonging to the same class with the enumerated games. * * * The presentment should show on its face that the offence charged comes within the definition of the statute; if not one of the enumerated games, it must be of the like kind, one of the unequal games included in the class prohibited." *Huff v. Commonwealth, supra* at 650.

*State v. Mitchell*, 47 W.Va. 789, 35 S.E. 845, involved a statute which made it a misdemeanor to "throw or cause to be thrown into any * * * brook * * * any dead animal carcass, or part thereof, or any putrid, nauseous or offensive substance, * * *."

The indictment charged that the defendant "did knowingly, willfully, and unlawfully throw and cause to be thrown into a certain brook * * * putrid, nauseous, and offensive substance, to-wit, sawdust, and the offall and refuse from a certain sawmill, and other putrid, nauseous and offensive substance."

The Court after taking judicial notice that sawdust was not a putrid substance held, among other things, that charging a violation by using the general words of the statute "and other putrid, nauseous, and offensive substance" was not sufficient, stating: "Though it is generally sufficient to follow the very words of the statute, 'not unfrequently other rules will require it to be expanded beyond the statutory terms. It must fully state the offense and, if this cannot be done in the mere statutory words, it must be expanded beyond them.'" *State v. Mitchell*, *supra* at 792-93, 35 S.E. at 847.

*Huff* was decided in Virginia in 1858 and is part of the common law of West Virginia. *Huff* and *Mitchell* are both judicial expressions of the concept contained in our State Constitution that "the accused shall be fully and plainly informed of the character and cause of the accusation," and a recognition of the general rule that an indictment should be so worded as to bring the case precisely within the description of the offense alleging all the material facts and circumstances necessary to constitute the essential requisites of the offense. The bare allegation that hashish is a Schedule I substance, therefore, is not sufficient unless we could take judicial notice that hashish is a "material, compound, mixture, or preparation of marihuana."

It is equally difficult to determine whether this Court can take judicial notice that hashish is a "material,

compound, mixture, or preparation of marihuana." If this were permissible, it would, of course, not be necessary for the indictment to describe hashish with greater particularity. The general rule is that courts will take judicial notice of the meaning of English words. In *State v. Mitchell, supra,* the Court, in taking judicial notice that sawdust was not a putrid, nauseous or offensive substance, said: " 'In fact, in the case of phrases and words, * * * the criterion is * * * common knowledge or general notoriety'." *State v. Mitchell, supra* at 790, 35 S.E. at 846. In 29 AM. JUR. 2d, *Evidence,* Section 90, page 123, it is stated: "In this respect, it is not necessary that the meaning of a word or phrase be universal to be judicially noticed; no more is required than that the meaning be general and notorious in a local sense, within the particular jurisdiction of the court. * * * [T]he courts will not take judicial notice of the precise meaning of merely technical terms, or of the commercial designation of an article where such designation is not commonly employed and is known only to a relatively few persons."

One jurisdiction has held it proper in determining the validity of an indictment to judicially notice that morphine is a derivative of opium. *State v. Vallie,* 83 Mont. 456, 268 P. 493. If this were an open question in this jurisdiction, we might be persuaded by the reasoning in *Vallie*—based primarily on a clear dictionary definition of morphine. A clear dictionary definition of hashish is not presented in this case. Moreover, the question is foreclosed by the holding in *State v. Lett,* 63 W.Va. 665, 60 S.E. 782.

The issue in *Lett,* while not involving a drug case, is closely parallel to the issue presented by this appeal. There the indictment charged that the defendant did "unlawfully carry about his person a certain revolver or other pistol, dirk, bowie knife, razor, slung shot, billy, metallic or other false knuckles and other dangerous and deadly weapons." The defendant had been arrested for carrying a "black jack". After discussing other contentions in the case, the Court declined to grant the State's

request that it judicially notice that a "black jack" was the same as a "billy". The Court said: "It would be a stretch of judicial cognizance to say that a black jack is a billy. If the indictment had charged the carrying 'a billy of that kind commonly called and known as a black jack,' there would be something in the claim of the State for a conviction, * * * . Or if the charge were that he carried a 'black jack, the same being a dangerous and deadly weapon,' there would be some ground to support the conviction. The attorney-general admits that he cannot find 'black jack' judicially defined in the books. He says that the Century Dictionary defines it as a small bludgeon, and it defines 'billy' as a short bludgeon, a policeman's club. * * * Therefore, he argues that a billy and black jack are synonymous. This process of proving that a black jack is a billy is inconclusive, but though correct, is a court to know these things without proof? Is a court to know by judicial cognizance, without proof, the meaning of every article named and defined in a dictionary? This is not to say that there are not some words of such common and uniform meaning as to be so judicially known." *State v. Lett, supra* at 666-67, 60 S.E. at 783.

There are numerous conceivable instances where we might take judicial notice of words used colloquially or only by some special or narrow segment of our society, particularly where a dictionary usage makes it clear that it is a word to be included by definition in the statute under scrutiny. We are guided by the decision in *Lett*, however, and hold that we cannot judicially notice that hashish is a "material, compound, mixture, or preparation of marihuana."

For reasons stated above, the indictment is void and the writ of prohibition prayed for in the petition is awarded.

*Writ awarded.*