STATE OF WEST VIRGINIA

*v.*

HARRY EDGAR BECK

(No. 14549)

Decided July 17, 1981.

*W. Craig Broadwater, Riley, Yahn & Cooey, Robert Fitzsimmons, Fitzsimmons & Parsons* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *James F. Wallington,* Assistant Attorney General, for defendant in error.

MILLER, JUSTICE:

Harry Edgar Beck was convicted in the Circuit Court of Brooke County of sexual assault in the first degree. Upon his conviction, the State proceeded with a recidivist hearing, resulting in the imposition of a mandatory life sentence under W. Va. Code, 61-11-18.

The appellant challenges both the underlying conviction and the recidivist sentence, on the basis of (1) the denial of his motion for a change of venue; (2) the refusal to quash the indictment which contained non-statutory language; (3) the impaneling of three jurors who were challenged for cause; (4) a ruling that a defense psychiatrist, if called, would be subject to cross-examination regarding the appellant's other criminal offenses; (5) a verdict based solely on the uncorroborated testimony of the victim; (6) a break in the chain of custody of evidence at the recidivist

hearing; and (7) a challenge to the recidivist sentence as constituting cruel and unusual punishment.

The appellant was indicted in June of 1977 on several counts of sexual assault and sexual abuse involving his 10-year-old stepdaughter.[1] The State proceeded to trial on Count 1 of the indictment, which charged the commission on April 24, 1977, of sexual assault in the first degree for engaging in "oral sex with another person . . . who was then incapable of consent because she was then less than eleven years of age," in violation of W. Va. Code, 61-8B-3.

Following psychiatric examination and a hearing regarding mental competency, the appellant was found to be competent to stand trial under W. Va. Code, 27-6A-2. An additional pretrial hearing was held regarding the appellant's motion for a change of venue based upon allegations of hostile pretrial publicity throughout the community. Following the hearing, the motion was denied and the case proceeded to trial before a jury.

At trial the State's case consisted primarily of the testimony of the 10-year-old child, who testified in some detail that, at the appellant's direction, she performed an act of oral intercourse upon him. The State's only other witness in its case-in-chief was the child's mother, who testified that two days later her daughter reported the incident to her. There was no further direct evidence regarding the event in question. The defense consisted of a number of alibi witnesses who testified that the appellant was elsewhere at the time the alleged offense was committed.

## I.

The appellant's first issue on appeal is based on the trial court's denial of his motion for a change of venue. The motion raised the claim of extensive hostile publicity surrounding the arrest of the appellant upon the present charge, and additional publicity about the appellant's

---

[1] Although the appellant and the child's mother were not legally married, they shared a home as husband and wife for a number of years preceding the events in question, during which time the child lived in the home as the appellant's stepdaughter in fact.

arrest later on an unrelated charge of sexual assault for the alleged rape of a woman in Ohio County.

The appellant's evidence at the hearing on the motion for a change of venue consisted of newspaper articles regarding the appellant's alleged offenses, and the testimony of seven friends and relatives regarding their observations of adverse publicity and hostile sentiment. Although counsel for the appellant read a portion of one newspaper article into the record,[2] the remainder of the articles have not been included in the record on appeal and are thus unavailable for consideration.

In response, the State called six witnesses selected at random from the list of potential jurors of Brooke County. Upon examination, all six acknowledged some familiarity with the case based upon their exposure to news reports. Four of the six expressed the view that they would be able to set aside their impressions from the news reports and render an unbiased verdict based solely on the evidence introduced at trial.

On appeal, the appellant argues that additional support for a change of venue was subsequently provided at trial when, in selecting the jury panel upon voir dire examina-

---

[2] Defense counsel quoted the following from the October 26, 1977, *Wheeling Intelligencer*:

"Brooke County Prosecuting Attorney, John Cooper, said Beck is facing charges of alleged sexual abuse of a ten year old and a nineteen year old girl. He expects the psychiatric examination to take twenty to thirty days. Beck would possibly face Brooke County charges because he's already been indicted in that county. Wheeling officials also served a warrant on Mr. Beck while he was in the Brooke County jail awaiting trial for Brooke County for the sexual assault charges. The warrant was issued as a result of the Wheeling woman identified him as the alleged assailant from a photograph. ... Prosecuting Attorney Cooper said, Beck is specifically charged with sexual assault of the daughter of his common law wife, but also this had been apparently been going on for a number of years. The Prosecuting Attorney said the little girl was nine years old when the alleged offense took place. . . . Cooper said Beck has denied in court and in privileged conversations with him any connection with the October 19th rape in Wheeling. However, Brooke County officials released Beck's name to the media late Tuesday."

tion, 40% of the potential jurors expressed some bias towards the appellant. The State points out, however, that the bias of a number of these potential jurors was based on the nature of the offense and the age of the victim—factors not directly related to the adverse media publicity. The State also observes that only 9 of 45 (20%) expressed bias attributable to publicity.[3]

Our test for when a change of venue is warranted is: "A present hostile sentiment against an accused, extending throughout the entire county in which he is brought to trial, is good cause for removing the case to another county." Syllabus Point 2, *State v. Sette*, 161 W. Va. 384, 242 S.E.2d 464 (1978); Syllabus Point 2, *State v. Dandy*, 151 W. Va. 547, 153 S.E.2d 507 (1967); Syllabus Point 1, *State v. Siers*, 103 W. Va. 30, 136 S.E. 503 (1927). In *State v. Sette*, this Court reversed a refusal to change venue where the defendant introduced newspaper articles, transcriptions of radio broadcasts, the results of a telephone public opinion poll, and demonstrated that nearly fifty percent of the jurors summoned were disqualified on the basis of a belief in guilt that they were unable to discard.

Here, we do not find that the trial court abused its discretion in failing to grant a change of venue. The record before us does not demonstrate widespread hostile media publicity. The testimony of the appellant's witnesses when viewed against the generality of the questions asked and the lack of specific identification of particular hostile publicity does not demonstrate present hostile community sentiment against the appellant. Furthermore, of the forty-five jurors drawn, there were nine who had some prior knowledge of the facts and revealed a fixed bias that necessitated their disqualification. This is contrasted with the situation in *Sette*, where nearly fifty percent of the jurors were disqualified for bias.

---

[3] We noted in *State v. Clawson*, 165 W. Va. 588, 270 S.E.2d 659, 675 (1980), that, "where it is determined during voir dire that an unbiased jury panel cannot be assembled, a change in venue can be granted at this point."

While we have indicated in *Sette* that the "failure to grant a change of venue in the face of widespread prejudicial pretrial publicity constitutes an abuse of discretion," 161 W. Va. 384, 242 S.E.2d at 470, this principle does not mean that the juror's actual response to pretrial publicity cannot be considered. Here, the record before us does not contain anything regarding the scope of publicity beyond a portion of a newspaper article. Even if we were to assume that there were a number of other articles exhibited to the trial court, the fact remains that the jurors' answers on voir dire demonstrate that they were able to make the unqualified assertion that they could determine the issues based solely on the evidence. Having some knowledge of the case does not automatically disqualify a juror, as the United States Supreme Court has stated in *Murphy v. Florida*, 421 U.S. 794, 799-800, 44 L.Ed.2d 589, 594-95, 95 S.Ct. 2031, 2036 (1975):

> "Qualified jurors need not, however, be totally ignorant of the facts and issues involved.
>
> " 'To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.' [*Irwin v. Dowd*, 366 U.S. 717, 723, 6 L.Ed.2d 751, 756, 81 S.Ct. 1639, 1642 (1961)]"

For the foregoing reasons, we find that the trial court did not abuse its discretion in declining to order a change of venue.

## II.

Immediately prior to trial, the appellant moved to quash the particular count of the indictment that the State had elected to bring to trial on the basis that its language varied from the statutory language defining the offense. The appellant argued that this variance filed to adequately apprise him of the charges as required by Article III,

Section 14 of our Constitution.[4] The challenged language in the indictment described the offense as "sexual intercourse, to-wit, oral sex with another person." W. Va. Code, 61-8B-3, setting forth the offense of sexual assault in the first degree, similarly employs the term "sexual intercourse,"[5] which is defined in W. Va. Code, 61-8B-1, to include "contact between the sex organs of one person and the mouth . . . of another person."[6]

We have rather consistently stated that an indictment charging a statutory offense need not use the precise language of the statute. It is sufficient if the indictment language is substantially equivalent to the statutory language. *State ex rel. Hubbard v. Spillers,* 157 W. Va. 522, 202 S.E.2d 180 (1974); *State v. Nazel,* 109 W. Va. 617, 156 S.E. 45 (1930); *State v. Riffe,* 10 W. Va. 794 (1877). This is the rule in other jurisdictions as noted in *State ex rel. Hubbard v. Spillers, supra:*

> "Despite many earlier contrary decisions in other jurisdictions, 'the modern rule [is] that in charging a statutory offense it is not necessary to use the exact words of the statute. An indictment or information for such an offense is sufficient if it follows the language of the statute substantially or charges the offense in equivalent words or others of the same import, if the defendant is thereby fully informed of the particular offense charged." 157 W. Va. at 525, 202 S.E.2d at 183.

---

[4] The material part of Article III, Section 14 of our Constitution is: "In all such trials, the accused shall be fully and plainly informed of the character and cause of the accusation. . . . "

[5] W. Va. Code, 61-8B-3, provides that:

"(a) A person is guilty of sexual assault in the first degree when:
\* \* \* \* \* \* \* \* \*
"(3) He, being fourteen years old or more, engages in sexual intercourse with another person who is incapable of consent because he is less than eleven years old."

[6] The complete definition is set forth in W. Va. Code, 61-8B-1(7):

" 'Sexual intercourse' means any act between persons not married to each other involving penetration, however slight, of the female sex organ by the male sex organ or involving contact between the sex organs of one person and the mouth or anus of another person."

Since the language of the statute and the language of the indictment are substantially equivalent, we find no error in the trial court's refusal to quash the indictment.

## III.

The appellant complains of the inclusion of three jurors on the jury panel who he urges should properly have been excused for cause.

We have traditionally recognized that a defendant on trial for a felony is entitled to a panel of 20 jurors, free from exception, before being called upon to exercise his right of peremptory challenge. *State v. Pratt*, 161 W. Va. 530, 244 S.E.2d 227 (1978); *State v. West*, 157 W. Va. 209, 200 S.E.2d 859 (1973); *State v. Gargiliana*, 138 W. Va. 376, 76 S.E.2d 265 (1953); *State v. Dushman*, 79 W. Va. 747, 91 S.E. 809 (1917). In Syllabus Point 1 of *State v. Kilpatrick*, 158 W. Va. 289, 210 S.E.2d 480 (1974), and *State v. Wilson*, 157 W. Va. 1036, 207 S.E.2d 174 (1974), the Court stated that:

> "The true test as to whether a juror is qualified to serve on the panel is whether without bias or prejudice he can render a verdict solely on the evidence under the instructions of the court."

In Syllabus Point 2 of *State v. Gargiliana*, 138 W. Va. 376, 76 S.E.2d 265 (1953), and Syllbus Point 3 of *State v. Johnson*, 49 W. Va. 684, 39 S.E. 665 (1901), we have treated the question of how a person who has indicated a preconceived opinion must respond in order to be qualified to sit.[7]

> "In order that one who has formed or expressed an opinion as to the guilt or innocence of the accused may be accepted as a competent juror on such panel, his mind must be in condition to enable him to say on his *voir dire* unequivocally and without hesitation that such opinion will not affect his judgment in arriving at a just verdict from the evidence alone submitted to the jury on the trial of the case."

The significant aspect of the voir dire dialogue, then, is not the juror's uncertainty as to whether he has formed an

---

[7] This is the same standard adopted by the United States Supreme Court in *Murphy v. Florida*, see text, *supra*, at 6.

opinion regarding guilt or innocence, but whether he can render a just verdict based solely upon the evidence adduced at trial.

Challenge was made to one potential juror because she had been equivocal about whether she had formed an opinion about the guilt or innocence of the defendant, answering "yes and no." She also responded, "outside of how I feel I guess not," to the initial question about whether she could render a true verdict based on the evidence. She was further examined about her exposure to the facts of the case and indicated that she had read some newspaper articles. She was finally asked if she knew of any reason why she could not render a verdict based solely on the evidence, and answered "no." We do not believe that her earlier equivocation, when read in the light of her final answers, rendered her incompetent to serve.

The second challenge was to an alternate member of the jury panel based on the juror's remarks on voir dire suggesting a reluctance to sit because of a long-planned vacation and a concern that he would not want to be involved with an extended jury deliberation if it interfered with his vacation.

Despite the juror's statements regarding his planned vacation, all of his answers regarding actual bias towards the defendant and the merits of the case indicated neutrality. Moreover, we note that this juror was an alternate juror and the alternate jurors were excused when the jury began its deliberations Friday afternoon. We find no error under the facts here presented in failing to strike this juror for cause.

The appellant's final objection to a member of the jury panel was to a juror who indicated that seven years previously a niece of his had been slain by a person who was subsequently defended by one of the attorneys who was representing the appellant in the present case.

We have acknowledged that the object of jury selection is "to secure jurors who are not only free from prejudice, but who are also free from the suspicion of prejudice." *State v. West,* 157 W. Va. 209, 219, 200 S.E.2d 859, 866 (1973); *State v.*

*Siers,* 103 W. Va. 30, 136 S.E. 503 (1927). Nevertheless, there appears to be no decision of this Court discussing a claim of juror bias deriving from a factual situation as tenuous as this. In a civil context, this Court rejected a claim of bias in *Utt v. Herold,* 127 W. Va. 719, 34 S.E.2d 357 (1945), based upon the circumstances that some of the jurors may have had close relatives die in accidents similar to the one that was the subject of the trial.

In the present case, this juror was given a rigorous individual voir dire to see if his niece's death resulted in any bias. During the course of the questioning, it developed that the juror had not attended his niece's murder trial, so that the adverse implication of the current defense attorney in that trial would appear to have had little prejudicial impact on this juror. The record discloses that this juror made unequivocal affirmative responses each time he was asked if he could render an impartial verdict based on the evidence and therefore we find no error in failing to strike this juror for cause.

### IV.

The appellant urges that his Sixth Amendment right to bring witnesses in his behalf was violated by the circuit judge's advance ruling that a defense psychologist could testify but would be subjected to cross-examination about other crimes committed by the appellant, including prior sexual acts against the victim in the present case and the arrest for an unrelated sexual assault on a 19-year-old female in Ohio County. The witness sought to be called was a psychologist who apparently would have testified from the appellant's psychological examination that it would be unlikely that he would have committed the involved sexual offense.[8]

---

[8] The trial court's initial decision to permit the psychological testimony was apparently based on authority that permits psychological testimony in regard to whether the defendant's psychological profile would suggest that he has predilections to commit the specific crime charged. *See generally,* C. McCormick, *Evidence* Chapter 17 (2d ed. 1972). This type of evidence would appear to be mainly confined to

We decline to find a violation of appellant's Sixth Amendment right to call witnesses.[9] The trial court had initially held that the witness could testify but would be subject to cross-examination as to facts concerning prior sexual misconduct of the appellant and other criminal offenses. Apparently, based upon the trial court's ruling on the latitude of cross-examination, the defense attorneys elected not to put the psychologist on the witness stand. We are not aware of any Sixth Amendment decisions that hold that where the trial court indicates that a broad right of cross-examination will be permitted and thereafter the witness is not placed on the witness stand, a Sixth Amendment violation has occurred.

We, of course, recognize that a state may not impose arbitrary limits on the admissibility of evidence which would hamper the fact-finding process, without violating the Sixth Amendment. The United States Supreme Court

sexually deviant crimes. The leading case is *Freeman v. State,* 486 P.2d 967 (Alaska 1971):

> "It appears to be uniformly accepted that psychiatric evidence showing that an individual accused of sexually deviant misconduct is not a sexual psychopath should properly be regarded to be character evidence. *See* People v. Spigno, 156 Cal. App.2d 279, 319 P.2d 458 (1957); State v. Cypher, 92 Idaho 159, 438 P.2d 904, 916 (1968); State v. Sinnott, 24 N.J. 408, 132 A.2d 298, 304-311 (1957); Ward v. Turner, 12 Utah 2d 310, 366 P.2d 72, 74 (1961); State v. Bromley, 72 Wash.2d 150, 432 P.2d 568 (1967); *See also* Curran, *[Expert Psychiatric Evidence of Personality Traits,* 103 U. Pa. L. Rev. 999 (1955)] *supra* note 4; Falknor & Steffan, *[Evidence of Character: From the "Crucible of the Community" to the "Couch of the Psychiatrist,* 102 U. Pa. L. Rev. 980 (1954)] *supra* note 4; and Deering's Calif. Ev. Code Ann. § 1102, at 9 (1966) (Law Revision Commission comment)." 486 P.2d at 972 note 8.

*Freeman* recognizes the perils of this type of testimony, which it categorizes as a species of character testimony, and requires advance disclosure by the party intending to use such testimony so that the other party may prepare rebuttal testimony, and allows the utilization of pretrial *in camera* hearings to preview the testimony to determine its relevancy and admissibility.

[9] We have discussed a defendant's Sixth Amendment right to call witnesses in *State v. Harman,* 165 W. Va. 494, 270 S.E.2d 146, 153 (1980), and *State v. Haverty,* 165 W. Va. 164, 267 S.E.2d 727, 731 (1980), noting its development in *Washington v. Texas,* 388 U.S. 14, 18 L.Ed.2d 1019, 87 S.Ct. 1920 (1967).

decisions are clear in this regard. *E.g., Washington v. Texas*, 388 U.S. 14, 18 L.Ed.2d 1019, 87 S.Ct. 1920 (1967) (striking a Texas statute which foreclosed defense testimony from a coparticipant in a crime); *Chambers v. Mississippi*, 410 U.S. 284, 35 L.Ed.2d 297, 93 S.Ct. 1038 (1973) (striking evidentiary rule that precluded the defendant from cross-examining witnesses whom he had called to testify); *Davis v. Alaska*, 415 U.S. 308, 39 L.Ed.2d 347, 94 S.Ct. 1105 (1974) (striking a statute which foreclosed cross-examination of prior juvenile offenses). In *Chambers* the Court made this general statement:

> "[T]he right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. ∗ ∗ ∗ But its denial or significant dimunition calls into question the ultimate 'integrity of the fact-finding process' and requires that the competing interest be closely examined."[10] 410 U.S. at 295, 35 L.Ed.2d at 309, 93 S.Ct. at 1046.

Here, the trial court's ruling did not necessarily result in any testimonial dimunition but involved an interpretation of the scope of the cross-examination. We believe that its impact on the ultimate fact-finding process was minimal at best.[11]

While the correctness of the trial court's ruling on the scope of cross-examination may not always answer the Sixth Amendment question, we believe that the correctness of such a ruling is not totally irrelevant. The general rule in regard to cross-examination of the defendant's good

[10] *See* Westen, "The Right of the Accused to Examine Defense Witnesses At Trial," *Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases*, 91 Harv. L. Rev. 567, 590 (part C) (1978); and Westen, "Rules of Practice that Discourage Witnesses from Taking the Stand," *The Compulsory Process Clause*, 23 Mich. L. Rev. 71, 139 (part 2) (1974).

[11] The present case is distinguisable from *Webb v. Texas*, 409 U.S. 95, 34 L.Ed.2d 330, 93 S.Ct. 351 (1972), where the Supreme Court concluded that the trial court's threats of perjury charges had intimidated the defense witness and caused him not to testify, resulting in a due process violation. *Cf. Cool v. United States*, 409 U.S. 100, 34 L.Ed.2d 335, 93 S.Ct. 354 (1972).

character [12] witnesses is contained in McCormick, *supra*, 456-57:

> "[T]he witness who has testified to the good reputation of the accused for the particular trait, may be cross-examined as to his means of knowledge of community opinion, not only generally, but specifically as to whether he 'has heard' that the defendant has committed particular criminal acts inconsistent with the reputation vouched for on direct. . . . As to indictments or other official charges, verdicts, convictions, or repreated arrests, or sentences for crime, it would seem allowable to ask the witness if he 'knows' of these, . . ." (Footnotes omitted)

We have adopted much the same rule in *State v. Ramey*, 158 W. Va. 541, 212 S.E.2d 737, 743 (1975), *overruled on other grounds, State v. McAboy*, 160 W. Va. 497, 236 S.E.2d 431 (1977), where we held that once the accused has placed his good character in issue, cross-examination could be made on prior criminal charges and convictions:

> "The character of the accused may also furnish the State with the opportunity to employ other criminal charges, offenses and convictions involving the defendant against him. Where the accused takes the stand or produces witnesses who testify as to his previous good character in defense of the charge against him, he or they may be cross-examined on otherwise unconnected and irrelevant matters to demonstrate his bad character."

## V.

The appellant's final challenge to his sexual assault conviction is that it was based upon the uncorroborated testimony of the victim. The appellant acknowledges that under our decisions corroboration of the testimony of the prosecuting witness in sexual assault cases has generally not been required. He urges that the rule might be modified to require some corroboration in cases such as the present

---

[12] We have previously shown in note 8, *supra*, that courts which permit this type of psychological evidence treat it as a species of character evidence.

one, where the prosecuting witness is immature and the charges arise in the context of a family dispute.

The requirement of corroboration in sexual assault cases has been the subject of considerable scholarly debate. *See* Note, *Corroborating Charges of Rape*, 67 Colum. L. Rev. 1137 (1967); Note, *The Rape Corroboration Requirement: Repeal Not Reform*, 81 Yale L. J. 1365 (1972); Comment, *Criminal Law–Rape–Sufficiency of Evidence to Support Conviction–Corroboration of Complainant's Testimony*, 15 Duq. L. Rev. 305 (1977); Comment, *United States v. Bear Runner: The Need for Corroboration in Incest Cases*, 23 St. Louis L. J. 747 (1979). *See also Cannellas v. McKenzie*, 160 W. Va. 431, 236 S.E.2d 327, 331 & n. 2 (1977). A significant majority of jurisdictions, however, have declined to impose strict corroboration requirements. *See* Note, 81 Yale L. Rev., *supra*, at 1367 & n. 16; and Comment, 15 Duq. L. Rev., *supra*, at 313 & n. 48.

This Court has consistently followed the majority position that "[a] conviction for rape may be had on the uncorroborated testimony of the female, and unless her testimony is inherently incredible her credibility is a question for the jury." Syllabus Point 4, *State v. Green*, 163 W. Va. 681, 260 S.E.2d 257 (1979). *E.g., State v. Beacraft*, 126 W. Va. 895, 30 S.E.2d 541 (1944); *State v. Golden*, 90 W. Va. 496, 111 S.E. 320 (1922); *State v. Rice*, 83 W. Va. 409, 98 S.E. 432 (1919). *See also Cannellas v. McKenzie*, 160 W. Va. 431, 236 S.E.2d 327, 331 & n. 2 (1977). We recently reexamined the principles underlying the corroboration rule in *State v. Green*:

"Three justifications for corroboration are: (1) the frequency of false charges of rape, (2) the presumption of innocence to which a defendant is entitled gives way in a rape case to jury emotional prejudices, and (3) the difficulty of defending against a rape allegation. Note, *The Rape Corroboration Requirement: Repeal Not Reform*, 81 Yale L. J. 1365, 1373 (1972).

"Each of these might present a compelling argument for adopting a corroboration requirement were it not that in the absence of corrobora-

tion, a defendant will be protected by trial judges' power to set aside or direct a verdict because of insufficient evidence, and juries' ability to screen out uncorroborated and frivolous charges. 7 J. Wigmore, *Evidence*, § 2061 at 354." 260 S.E.2d at 260 n. 2.

While it is true that most of the literature and case law discuss the corroboration rule in a rape context, there would appear to be no significant reason why the same rule should not apply to any sexual offense. Several courts which have the same rule that we do that corroboration is not necessary in rape cases unless the testimony is inherently incredible have applied the same rule to other sexual offenses. *Riddle v. State*, 402 N.E.2d 958 (Ind. 1980); *Taylor v. State*, 537 P.2d 434 (Okla. Crim. 1975); *People v. Johnson*, 99 Ill. App. 1055, 423 N.E.2d 1206 (1981). We, therefore, conclude that a conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible, the credibility is a question for the jury. In the present case, after a careful review of the victim's testimony, we do not find it to be inherently incredible and, therefore, decline to reverse the conviction on this basis.

## VI.

The appellant's remaining two grounds of appeal relate to the recidivist hearing and sentence of life imprisonment that was imposed for recidivism following his conviction on the charge of sexual assault. The first claim is that in the recidivist proceeding the State failed to fully establish the chain of custody of the fingerprint cards that were imprinted at the time of the appellant's arrest for sexual assault. The fingerprint cards were admitted in the recidivist proceeding for the purpose of establishing the appellant's identity as the same person who had been convicted of two prior felonies.

In Syllabus Point 2 of *State v. Charlot*, 157 W. Va. 994, 206 S.E.2d 908 (1974), we stated:

"When an object or article has passed through several hands while being analyzed or examined

before being produced in court, it is not possible to establish its identity by a single witness, but if a complete chain of evidence is established, tracing the possession of the object or article to the final custodian, it may be properly introduced in evidence."

See also State v. Davis, 164 W. Va. 783, 266 S.E.2d 909 (1980); State v. Harriston, 162 W. Va. 908, 253 S.E.2d 685 (1979); Cannellas v. McKenzie, 160 W. Va. 431, 236 S.E.2d 327 (1977). All of these decisions, however, deal with either quantities of narcotics or articles of clothing, which as items of original evidence, are of a nature which can be easily interchanged, altered, or confused. Chain of custody requirements, however, do not apply with the same force to nonfungible items which are unique and identifiable in themselves. McCormick explains the distinction between the two categories:

"If the offered item possesses characteristics which are fairly unique and readily identifiable, and if the substance of which the item is composed is relatively impervious to change, the trial court is viewed as having broad discretion to admit merely on the basis of testimony that the item is the one in question and is in a substantially unchanged condition. On the other hand, if the offered evidence is of such a nature as not to be readily identifiable, or to be susceptible to alteration by tampering or contamination, sound exercise of the trial court's discretion may require a substantially more elaborate foundation. A foundation of the latter sort will commonly entail testimonially tracing the 'chain of custody' of the item with sufficient completeness to render it improbable that the original item has either been exchanged with another or has been contaminated or tampered with." McCormick, Evidence 527-28 (2d ed. 1972).

We recently recognized this distinction in State v. Davis, 164 W. Va. 783, 266 S.E.2d 909, 912 (1980), where the Court discussed the chain of custody requirements to support the admissibility of a marijuana exhibit:

"In the case at bar, there was an especially acute problem with laying a proper foundation for admission of the evidence because of the very nature of the exhibits involved. There is obvious difficulty in identifying a fungible exhibit such as marihuana, when contrasted with a readily identifiable, physically distinct article, such as a gun or a photograph."

In the present case, in addition to the fingerprints, the cards in question contained the appellant's name, sex, and race, the signature of the attending officer, the date of the impressions, and the signature of the appellant himself. The fingerprint cards squarely fall into the category of evidence unique and independently identifiable. Furthermore, there was no suggestion of tampering or susceptibility to tampering, aside from the break in the chain of custody, a break which, under the foregoing principles, is irrelevant.

## VII.

The appellant's final assignment of error is that his recidivist life sentence constitutes cruel and unusual punishment in that it is disproportionate to the severity of the offenses upon which it is based. The convictions supporting the appellant's recidivist sentence are a 1965 conviction of unlawful assault, a 1966 conviction for interstate transportation of a stolen vehicle, and the present 1977 conviction of first degree sexual assault.

In *Wanstreet v. Bordenkircher*, ___ W. Va. ___, 276 S.E.2d 205 (1981), we discussed at some length the concept of proportionality as it relates to life recidivist sentences. We concluded that Article III, Section 5 of the West Virginia Constitution contains an express proportionality principle that mandates a stricter State review of recidivisit sentencing than would be applied by the United States Supreme Court under federal standards established in *Rummel v. Estelle*, 445 U.S. 263, 63 L.Ed.2d 382, 100 S.Ct. 1133 (1980).

In *Wanstreet,* we stated that the appropriateness of a life recidivist sentence under our constitutional proportional-

ity provision found in Article III, Section 5, will be analyzed as follows:

> "We give initial emphasis to the nature of the final offense which triggers the recidivist life sentence, although consideration is also given to the other underlying convictions. The primary analysis of these offenses is to determine if they involve actual or threatened violence to the person since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the recidivist statute." 276 S.E.2d at 214.

In the present case, unlike with the extremely less severe offenses in *Wanstreet,* we find that the appellant's convictions of unlawful assault and of first degree sexual assault unquestionably constitute, in their own manner, actual and threatened violence to the person. Consequently, we conclude as we did similarly severe offenses, in *Martin v. Leverette,* 161 W. Va. 547, 244 S.E.2d 39 (1978), and *State v. Vance,* 164 W. Va. 216, 262 S.E.2d 423 (1980), that the life sentence imposed for recidivism is not constitutionally disproportionate to the offenses upon which it is based.

For the foregoing reasons, we find no error in either the conviction for sexual assault or the the imposition of a life sentence for recidivism.

*Affirmed.*