**FILED**
**April 3, 2019**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*No.* 17-1066 *State of West Virginia v. Joe Roger Lane*

**ARMSTEAD, J., dissenting:**

The application of West Virginia's recidivist statute, set forth in *W. Va. Code* §§ 61-11-18(c) and 61-11-19 (2000) (read *in para materia*, hereinafter "recidivist statute"), has undergone a significant transformation by this Court over the past four decades. Beginning with *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981), this Court has gradually strayed from a straightforward and consistent application of the clear language of the statute to engage in an ever-evolving effort to reformulate the statute and impose a myriad of hurdles to its application. While this evolution appears motivated by a desire to balance the intent of the recidivist statute with concerns that its effect in certain cases may violate Article III, Section 5 of the West Virginia Constitution, the end result is an inconsistent hodgepodge of legal authority which, for the reasons set forth more fully below, would appear to call for a reevaluation and clarification of the statute by the Legislature.

It is a long-standing rule of statutory interpretation that this Court is to give the plain meaning to a statute, so long as the statute is clear upon its face. "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syllabus Point 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951). "Where the language of a statute is plain and unambiguous, there is no basis for application of rules of statutory construction; but courts must apply the statute according to the legislative intent plainly expressed therein." Syllabus Point 1, *Dunlap v. State Compensation Director*, 149 W.Va. 266, 140 S.E.2d 448

1

(1965).  "Courts always endeavor to give effect to the legislative intent, but a statute that is clear and unambiguous will be applied and not construed."  Syllabus Point 1, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968).   "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."  Syllabus Point 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970).  "We look first to the statute's language.  If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 587, 466 S.E.2d 424, 438 (1995).

Despite the clear and unambiguous language of the recidivist statute, this Court has strayed from its role to "read the relevant law according to its unvarnished meaning, without any judicial embroidery." Syllabus Point 3, in part, *West Virginia Health Care Cost Review Authority v. Boone Memorial Hosp.*, 196 W.Va. 326, 472 S.E.2d 411 (1996).  The recidivist statute requires a trial court to impose a life sentence for persons convicted of a "crime punishable by confinement in a penitentiary," who have been found by a jury to be the same person as previously convicted of two crimes punishable by confinement in the penitentiary.  *W. Va. Code* §§ 61-11-18(c) and 61-11-19.  *W. Va. Code* § 61-11-18 (2000) provides, in pertinent part:

> (c) When it is determined, as provided in section nineteen of this article, that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life.

2

Once the prosecutor has filed the information, the procedure for a trial court to follow in a recidivist action is found in *W. Va. Code* § 61-11-19 (1943), which states:

> It shall be the duty of the prosecuting attorney when he has knowledge of former sentence or sentences to the penitentiary of any person convicted of an offense punishable by confinement in the penitentiary to give information thereof to the court immediately upon conviction and before sentence. Said court shall, before expiration of the term at which such person was convicted, cause such person or prisoner to be brought before it, and upon an information filed by the prosecuting attorney, setting forth the records of conviction and sentence, or convictions and sentences, as the case may be, and alleging the identity of the prisoner with the person named in each, shall require the prisoner to say whether he is the same person or not. If he says he is not, or remains silent, his plea, or the fact of his silence, shall be entered of record, and a jury shall be impanelled [sic] to inquire whether the prisoner is the same person mentioned in the several records. If the jury finds that he is not the same person, he shall be sentenced upon the charge of which he was convicted as provided by law; but if they find that he is the same, or after being duly cautioned if he acknowledged in open court that he is the same person, the court shall sentence him to such further confinement as is prescribed by section eighteen of this article on a second or third conviction as the case may be.

A mandatory life sentence is required for a defendant convicted of a third felony. However, in 1981, this Court issued its decision in *Wanstreet*, adopting a new test to determine if a sentence under the recidivist statute would violate the provisions of Article III, Section 5 of the West Virginia Constitution, which states, that a criminal sentence "shall be proportioned to the character and degree of the offence." *W. Va. CONST.*, art. III, § 5. *See*, Syllabus Point 8, *State v. Vance*, 164 W. Va. 216, 262 S.E.2d 423 (1980).

3

The facts in *Wanstreet* were fairly straightforward. In 1967, George Wanstreet was found guilty of forging a $43.00 check. *Wanstreet*, 166 W. Va. 523, 524-525, 276 S.E.2d 205, 207. He had been previously convicted of forgery of a check (1951), and arson of a hay barn (1955). *Id*. After his 1967 conviction, Wanstreet was sentenced to life in prison for having been convicted of three felonies. *Id*.

In its analysis in *Wanstreet*, this Court found that the recidivist statute had been upheld "in the face of a number of constitutional challenges." *Id*., 166 W. Va. 523, 525, 276 S.E.2d 205, 207. Syllabus Point 3 of *Martin v. Leverette*, 161 W. Va. 547, 244 S.E.2d 39 (1978), provides, "the habitual criminal statute, *W. Va. Code*, 61-11-18, and the enhanced sentence provided thereunder, are not per se violative of the Equal Protection or Cruel and Unusual Punishment Clauses of the West Virginia or the United States Constitutions." Syllabus Point 3, in part, *Martin*, *Id*.. "This same result has been reached by the United States Supreme Court as against challenges made to our statute based on due process and equal protection grounds, *Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962), and as against claims of double jeopardy and cruel and unusual punishment, *Graham v. West Virginia*, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917 (1912)." *Wanstreet*, 166 W. Va. 523, 525, 276 S.E.2d 205, 207.

From this analysis, this Court issued two new Syllabus Points in *Wanstreet*:

> While our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence.

4

> In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

Syllabus Points 4 & 5, *Wanstreet*, 166 W. Va. 523, 276 S.E.2d 205. In so holding, this Court, in my view, incorrectly held the application of the recidivist statute was violative of the Constitution of West Virginia and essentially rewrote and reformulated the statute.

Prior felonies which were only felonies because of the repeat offender status of the defendant were excluded from consideration. *Wanstreet*, 166 W. Va. 523, 526, 276 S.E.2d 205, 208 (citing, *State v. Brown*, 91 W. Va. 187, 112 S.E. 408 (1922)). Felonies committed before the conviction and sentencing for a previous felony were also excluded from consideration. *Wanstreet*, 166 W. Va. 523, 526, 276 S.E.2d 205, 208 (citing, *State v. McMannis*, 161 W.Va. 437, 242 S.E.2d 571 (1978); *State ex rel. Yokum v. Adams*, 145 W.Va. 450, 114 S.E.2d 892 (1960); *State ex rel. Medley v. Skeen*, 138 W.Va. 409, 76 S.E.2d 146 (1953); *Dye v. Skeen*, 135 W.Va. 90, 62 S.E.2d 681 (1950)). Convictions by a military court were likewise excluded. *Wanstreet*, 166 W. Va. 523, 526, 276 S.E.2d 205, 208 (citing, *State v. Wheeler*, 123 W. Va. 279, 14 S.E.2d 677 (1941)).

In cases following *Wanstreet*, this Court continued to supplement the statute by adding elements to it:

> The appropriateness of a life recidivist sentence under our constitutional proportionality provision found in Article III, Section 5, will be analyzed as follows: We give initial emphasis to the nature of the final offense which triggers the

recidivist life sentence, although consideration is also given to the other underlying convictions. The primary analysis of these offenses is to determine if they involve actual or threatened violence to the person since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the recidivist statute.

Syllabus Point 7, *State v. Beck*, 167 W. Va. 830, 286 S.E.2d 234 (1981) (adding actual or threatened violence to the list of considerations). Post-*Wanstreet*, this Court has, on numerous occasions, handed down what are seemingly divergent and inconsistent opinions on the application of the recidivist statute. Four of those cases are highlighted here.

In *State v. Deal*, 178 W. Va. 142, 358 S.E.2d 226 (1987), this Court found that felony convictions for unlawful wounding (1969), grand larceny (1971), and possession of a controlled substance with intent to deliver (1985) did not "warrant[] imposition of the ultimate punishment available in this jurisdiction." *Deal*, 178 W. Va. 142, 147, 358 S.E.2d 226, 231.

Likewise, in *State v. Miller*, 184 W. Va. 462, 400 S.E.2d 897 (1990), this Court vacated a life sentence under the recidivist statute stemming from a fourth felony conviction for unlawful assault – shooting a houseguest – on these grounds:

> In this case, the final felony which triggered application of the recidivist statute was unquestionably a violent crime. The first underlying felony, the juvenile conviction for breaking and entering, posed only a threat of violence. However, the two more recent felonies [forgery and uttering and obtaining money by false pretenses] were not crimes of even a potentially violent nature. Certainly, it cannot be said that the appellant had history of violent felony convictions prior to this shooting incident.

6

*Miller*, 184 W. Va. 462, 465, 400 S.E.2d 897, 900. Two clearly violent felonies, including the most recent – which involved shooting another person – were not deemed violent "enough" for application of the recidivist penalty.

Conversely, in *State v. Housden*, 184 W. Va. 171, 399 S.E.2d 882 (1990), this Court found that convictions for sodomy (1957), breaking and entering (1968), grand larceny (1982), and burglary and grand larceny (1988), did warrant imposition of a life sentence.

Finally, as Respondent aptly points out in its brief, in *State ex rel Daye v. McBride*, 222 W. Va. 17, 658 S.E.2d 547 (2007), this Court upheld the application of a life sentence under the recidivist statute where the defendant was convicted a third time for possession of crack cocaine with the intent to deliver. All three convictions which warranted the recidivist sentence in *Daye* were for possession of crack cocaine with intent to deliver. *Id.*

For the reasons outlined above, I believe the recidivist statute should be applied as written and that the additional requirements imposed in *Wanstreet* and its progeny, including *State v. Beck*, 167 W. Va. 830, 286 S.E.2d 234 (1981) (holding that the offenses giving rise to the recidivist life sentence should be analyzed to determine "if they involve actual or threatened violence to the person"), are beyond the scope of the statutory requirement.

However, even applying the additional requirements and safeguards imposed by *Wanstreet, Beck* and the varied decisions that have followed, affirmation of the life sentence pursuant to the recidivist statute in this case is appropriate and does not violate the Petitioner's Constitutional right to be free from disproportionate punishment. In *Beck,* this Court held:

7

> We give initial emphasis to the nature of the final offense which triggers the recidivist life sentence, although consideration is also given to the other underlying convictions. The primary analysis of these offenses is to determine if they involve actual or threatened violence to the person since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the recidivist statute.

Syllabus Point 7, *Beck*, *supra*. In this case, the prior offenses include a charge of unlawful wounding for which the Petitioner was convicted in 1997 and conspiracy to commit a felony of transferring stolen property for which the Petitioner was convicted in 2009. Significantly, the most recent offense giving rise to the recidivist life sentence was the Petitioner's conviction for selling Oxycodone to a confidential informant on two separate occasions, one of which involved the presence of a toddler.

The majority, relying on *State ex rel Boso v. Hedrick,* 182 W. Va. 701, 391 S.E.2d 614 (1990), and *State v. Deal, supra*, found that the recidivist life sentence imposed in the case at bar violates the proportionality clause of the West Virginia Constitution. The majority emphasizes that, in *Boso,* the defendant's prior convictions of delivery of twenty grams of marijuana and breaking and entering were not "per se" crimes of violence and the record did not reflect that weapons were used or that there was a threat of violence. Discussing *Deal*, the majority emphasized that the most recent crime for which the defendant was convicted also related to marijuana, in that case possession of 125.4 grams of marijuana with intent to deliver, and the prior conviction for unlawful wounding occurred sixteen years before the defendant's second conviction for grand larceny. In this case, the facts related to the most recent offense are of a much more serious nature. The

8

Petitioner was convicted of selling Oxycodone on two separate occasions to an informant where a small child was present or in the immediate vicinity.

While the majority distinguishes *Daye* by stating that it involved multiple convictions under the Uniform Controlled Substances Act and did not involve a direct Constitutional proportionality clause challenge, the majority at the same time concedes that the direct appeal by the Petitioner in *Daye* challenging his life sentence was denied by this Court. In fact, this Court in *Daye* expressly recognized that the convictions in that case were under the Uniform Controlled Substances Act and found that such convictions nonetheless subjected the defendant to being sentenced under the recidivist statute, holding:

> When any person is convicted of an offense under the Uniform Controlled Substances Act (*W.Va. Code*, Chapter 60A) and is subject to confinement in the state correctional facility therefor and it is further determined, as provided in *W. Va. Code*, 61–11–19 (1943), that such person has been before convicted in the United States of a crime or crimes, including crimes under the Uniform Controlled Substances Act (*W. Va. Code*, Chapter 60A), punishable by confinement in a penitentiary, the court shall sentence the person to confinement in the state correctional facility pursuant to the provisions of *W. Va. Code*, 61–11–18 (2000), notwithstanding the second or subsequent offense provisions of *W. Va. Code*, 60A–4–408 (1971).

Syllabus Point 3, *Daye, supra*. The *Daye* opinion was issued in 2007, despite more than three decades of evolving precedent in the wake of *Wanstreet*. It is clear that this Court recognized the appropriateness of applying the recidivist statute to cases involving repeat offenses even when all of the offenses involved drug trafficking crimes in violation of the Uniform Controlled Substances Act.

I am particularly inclined to dissent from the majority in light of the fact that I believe there is substantial evidence that situations, such as the one at bar, involving use of confidential informants to conduct purchases of controlled substances are inherently dangerous and fraught with a serious risk of violence. I find the language in the Respondent's brief before this Court outlining the nature of this risk accurate and compelling:

> Illegal drug trade is proximately linked to violence against a person in that it evolves from a culture of physical peril, harm to children (such as those born with withdrawals or, as in this case, direct witnesses to drug transactions and drug-intoxicated adults), and crippling addictions... Selling opiates is not, as Petitioner contends, a nonviolent offense, but rather "one phase of a large scale, well entrenched criminal activity that springs from human greed and preys on man's weakness – one that turns buyers into sellers, makes addicts out of newborn infants and sets addicts to mugging, thievery, prostitution, robbery and murder to support an insatiable appetite." *People v. Gardner*, 78 Misc. 2d 744, 750, 359 N.Y.S.2d 196, 202 (N. Y. Sup. Ct. 1974). This sentiment from *Gardner* is neither archaic nor limited to other jurisdictions. In Beckley, West Virginia, on August 29, 2006, right before the eyes of both his girlfriend and a fellow officer, "Corporal Charles E. 'Chuck' Smith, III, of the Beckley Police Department was shot and killed during a undercover drug deal." *State v. Martin*, 224 W. Va. 577, 579, 687 S.E.2d 360, 362 (2009) (per curiam). In Huntington, West Virginia, a drug dealer paid a drug addict $1,500 to murder a prostitute suspected of stealing from the dealer's drug stash. *State v. Holmes,* No 11-0436, 2011 WL 8197528, at *1 (W. Va. Nov. 10, 2011)

> Despite any argument that a confidential informant's involvement with law enforcement somehow reduces the threat of violence, informants take on great risk in their operations. In 2014, a man facing prosecution for selling narcotics to a confidential informant learned the identity of the informant, lured her to a secluded stretch of railroad tracks on the West

Side of Charleston, West Virginia, confronted her about her work as an informant, listened to her plead for her life, and shot her in the back as she attempted to flee. *United States v. Dixon*, 191 F. Supp. 3d 603, 607 (S.D. W. Va. 2016). He then shot her twice more. "the last of which was at close range and in the face," carrying "out the murder with the intent both to retaliate against [the informant] for her cooperation with police and to prevent her from providing additional evidence or testimony against him related to the drug trafficking investigation" *Id.* (internal citations omitted). Petitioner's argument fails to account for the "severe and devastating impact that the opioid crisis has had on this country and, particularly, on West Virginia," including the high potential for violence in even controlled purchases arranged by undercover law enforcement and confidential informants. *United States v. Wilmore*, 282 F. Supp. 3d 937, 941 (S.D. W. Va. 2017) (citing *United States v. Walker,* No. 2:17-CR-00010, 2017 WL 2766452, at *3-7 (S.D. W. Va. June 26, 2017)); *see, e.g., United States v. Dixon, supra; see also State v. Martin, supra.*

In light of the substantial risk of violence involved in the controlled substance purchases in this case, exacerbated by the presence of a toddler at the location at which one of the purchases took place, I believe there is sufficient evidence to support a finding that there was, in fact, a risk of violence in this case. Therefore, consistent with this Court's holdings in *Wanstreet, Beck,* and *Daye,* application of the recidivist statute in the case at bar is appropriate, would uphold the statute's clear intent as evidenced by its plain language, and complies with our state and federal Constitutions.

Although I disagree that the recidivist statute has resulted in Constitutionally deficient sentences, it is indisputable that this Court is authorized, and is in fact required, to protect the rights of our citizens to be free from the imposition of any sentence that it deems to violate their Constitutional rights. Even if I would have reached a different result, this Court was fully within its Constitutional role and function to determine that the

11

recidivist statute as adopted by the Legislature or as applied by the courts in specific circumstances was in violation of our State's Constitution. At the same time, when this Court determines that a statute adopted by the Legislature violates such Constitutional rights, I believe it is proper for the Legislature, should it choose to do so, to attempt to remedy the Constitutional deficiency as identified by this Court through legislative action rather than for this Court, by judicial decree, to effectively alter the code and impose provisions that are not included in the four corners of the statute. Ultimately, it would be the role of this Court to determine whether any such modifications adopted by the Legislature would, in fact, remedy the Constitutional deficiency and render the statute and its specific application, Constitutional. Accordingly, I would strongly urge the Legislature to revisit the recidivist statute in light of this Court's previous decisions and take such steps, if any, it deems appropriate to address the Constitutional concerns previously expressed by this Court. Such action would not only clarify the Legislature's intent relating to the recidivist statute but would also provide prosecutors, defense counsel, and the judiciary guidance in handling issues arising from the statute.

Because I believe the imposition of the life sentence was proper in the case before us pursuant to a clear reading of the recidivist statute, and because the circumstances present in this case involved a risk of violence, I would affirm the life sentence. For these reasons, I respectfully dissent.