**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia ex rel. Juan M.,**
**Petitioner Below, Petitioner**

**vs.) No. 22-0011** (Kanawha County No. 18-P-197)

**Donnie Ames, Superintendent,**
**Mount Olive Correctional Complex,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Juan M.[1] appeals the December 6, 2021, order denying his petition for post-conviction habeas corpus relief.[2] Upon our review on rehearing, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.[3]

J.S., petitioner's biological daughter, said that petitioner sexually abused her when she was fifteen and sixteen years old. J.S. eventually confided in her boyfriend about the abuse, and the police were called. J.S. told a forensic interviewer about petitioner's sexual acts and the number and location of the moles on his penis. In an initial statement, J.S.'s mother said she had concerns about petitioner and J.S. because she once saw them lying together on J.S.'s bed and was "suspicious" as to what might be going on. J.S. described certain acts that had occurred in the doorway to her bedroom, and the police later found petitioner's DNA on the carpet in that bedroom doorway. On July 24, 2014, petitioner was indicted on twenty counts of sexual abuse by a parent in violation of West Virginia Code § 61-8D-5.

---

[1] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[2] Petitioner appears by counsel Matthew Brummond. Respondent Donnie Ames, Superintendent, Mount Olive Correctional Complex appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Andrea Nease Proper.

[3] An initial memorandum decision was issued in this case on April 5, 2023. On April 27, 2023, petitioner filed a petition for rehearing pursuant to Rule 25 of the West Virginia Rules of Appellate Procedure. We granted the petition for rehearing on June 7, 2023. Having considered the petition for rehearing, we again affirm the circuit court's order.

In October of 2014, public defender Michael Malone was appointed to petitioner's case and argued for a bond reduction and GPS home confinement tracking. Thereafter, petitioner made bond and was released to home confinement. Malone also turned over records to the State and agreed to a continuance as he was still obtaining discovery from the State. Thereafter, Malone left the public defender's office (the "PDO"), and, in March of 2015, public defender Brendan Cook assumed the case and agreed to a two-month continuance. In May of 2015, petitioner moved to continue as Cook was leaving the PDO. Petitioner was thereafter represented by PDO lawyers Sara Whittaker and Ronni Sheets ("trial counsel"), who remained on the case through petitioner's trial. Trial counsel thereafter sought several continuances due to discovery issues and pretrial motion practice. Many of the pretrial motions related to significant issues in the case and petitioner's trial counsel prevailed on a number of those motions. In fact, the trial court commented on the good quality of trial counsel's preparation and motion practice.

Petitioner's trial commenced on March 21, 2016. On opening, petitioner's trial counsel asserted that J.S.'s story had changed twice; she made up her abuse claim regarding petitioner because her parents would not let her see her boyfriend; petitioner cooperated during the investigation; J.S. erroneously identified the number of moles on petitioner's penis at least twice; and in J.S.'s cell phone record (which contained 24,000 texts), she never mentioned any abuse. At trial, J.S. testified that the abuse started when she was fifteen years old; petitioner told her she had to do something for him if she wanted to do things with her friends; almost every day, petitioner touched her vagina with his hands and penis, forced her to rub her vagina against his penis, and attempted oral and anal penetration; and following her disclosure of the abuse, she had to change schools, live with her aunt, and no longer had a relationship with her parents. During petitioner's trial counsel's cross-examination of J.S., they pointed out the inconsistencies in her statements about the number of moles on petitioner's penis. Trial counsel also elicited testimony that J.S. preferred to live with her aunt who took her on trips, allowed her to see her boyfriend, and bought her gifts. There was also testimony that, just before J.S. alleged petitioner's abuse, she had a fight with her parents who took her phone and told her she could no longer see her boyfriend. Trial counsel also cross-examined J.S.'s aunt who said J.S. was alone with her many times before J.S. ever alleged that petitioner had abused her. Trial counsel then explored the financial gain the aunt received for housing J.S. Trial counsel also cross-examined J.S.'s Child Protective Services ("CPS") worker to show the many things J.S. did not disclose in her initial CPS interview, and the witnesses the CPS worker failed to interview.

On cross-examination of the investigating officer, trial counsel elicited that the officer did not interview J.S.'s boyfriend, guardian, or any of her friends and, instead, interviewed only petitioner and J.S.'s mother. In cross-examining the State's DNA analyst, trial counsel elicited that the sperm found near J.S.'s bedroom doorway could have been tracked there after it dried, and it could not be determined how long the sperm had been on the carpet. On closing, trial counsel highlighted J.S.'s inconsistent statements, petitioner's explanation for the semen on the floor by J.S.'s bedroom doorway, that J.S.'s mother never heard or saw any abuse, and that J.S. likely claimed her father abused her so that she could live with her aunt and be with her boyfriend. Petitioner was convicted on nineteen of twenty counts. Thereafter, the trial court sentenced petitioner to forty to eighty years in prison to be followed by ten years of extended supervision.

In 2018, petitioner filed a petition for a writ of habeas corpus alleging ineffective assistance of trial counsel due to trial counsels' refusal to subpoena certain witnesses and failure to put petitioner and his wife on the stand; and due to trial delays caused by his first two appointed counsel leaving the PDO.[4] At petitioner's 2021 omnibus evidentiary hearing, trial counsel Sara Whitaker testified about the actions taken in preparation for trial, including searching for and interviewing witnesses, and the resulting strategic decisions about whether certain witnesses should be called. For instance, both petitioner and J.S.'s mother did poorly during trial preparation and had character issues that would have been evident if they had testified. Further, petitioner came across as openly hostile toward J.S., and J.S.'s mother initially told officers that she had suspected petitioner was sexually involved with their daughter. Other potential witnesses were unreachable or had problematic issues. For instance, one witness refused to testify as she felt she had been interviewed prior to trial too many times. Another witness made sexual abuse allegations against petitioner. Two other witnesses claimed to have been in petitioner's home and to have seen his interactions with J.S.; however, there was contradictory evidence as to whether those persons were in the home when J.S. was in the home. Trial counsel Whitaker testified that any delay due to the substitution of counsel in the PDO did not affect any witnesses.

Co-trial counsel Ronni Sheets affirmed Whitaker's testimony. Sheets added that the defense's trial strategy included showing that J.S. was a teenager who made an impulsive decision to lie about her father and then did not know how to back out of the lie. Sheets also highlighted two damning pieces of evidence against petitioner that were difficult for the defense to overcome: (1) that petitioner's DNA was found where J.S. said it would be found (on the carpet at the entry of her bedroom) and (2) that J.S. knew about the moles on petitioner's penis even if she got the number of moles wrong. Sheets stated that petitioner's explanation regarding how J.S. knew about the moles (that it was discussed at the family's dinner table) was not credible. Sheets noted that petitioner was offered a plea deal prior to trial and that she and Whitaker told petitioner that it was in his best interest to take the deal, but he refused.

The habeas court denied relief, finding that petitioner's counsel was not ineffective because counsels' decisions regarding cross-examination were strategic in nature; counsel interviewed many witnesses, but the witnesses' proposed testimony was questionable and/or would not have helped petitioner's case; petitioner failed to state how any delay of the trial prejudiced him; and counsel did not err in advising petitioner not to testify. Petitioner now appeals.

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

---

[4] In his habeas petition, petitioner also challenged the trial court's refusal to declare a mistrial after it discovered the PDO represented one of the witnesses at trial on unrelated charges and the allegedly improper search and seizure of the semen-stained carpeting from petitioner's home. Petitioner does not raise these issues on appeal.

On appeal, petitioner argues that he was denied effective assistance of counsel. We apply the following standard:

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. Pt. 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). "Petitioner's burden in proving ineffective assistance of counsel is heavy as there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Harold B. v. Ballard*, No. 16-0029, 2016 WL 5210852, at *4 (W. Va. Sept. 19, 2016) (memorandum decision).

Petitioner fails to satisfy either prong of *Miller*. Petitioner's trial counsel filed at least nineteen pretrial motions, including motions to suppress or exclude evidence and to reduce bond. Petitioner does not identify what questions should have been asked on cross-examination that were not asked and, as the trial court noted, petitioner's trial counsel effectively cross-examined each witness. At trial, questions by petitioner's trial counsel highlighted: the discrepancies in the victim's testimony; that J.S. wanted to live with her aunt who allowed her to see her boyfriend; that the officer on the case did not do a thorough investigation; and responses that supported trial counsels' theory that J.S. made up the allegations because she was angry with her parents. Trial counsel developed a theory of the case that was not inherently unreasonable nor one that "no reasonably qualified defense attorney would have so [employed] in the defense of an accused." Syl. Pt. 21, in part, *State v. Thomas*, 157 W. Va. 640, 203 S.E.2d 445 (1974).

Further, petitioner's argument that his trial counsels' supposed lack of preparation resulted in trial delays is also unsupported. Moreover, as the habeas court found, petitioner failed to state how the outcome of his trial would have changed if his trial had been held sooner. As for petitioner's claim that trial counsel erred in failing to call any witnesses, including himself and J.S.'s mother, we find that trial counsels' decision was strategic in nature and not unreasonable. Petitioner and J.S.'s mother did poorly in witness preparation, had character issues that would have come forward if they had testified, and their trial counsel explained their belief petitioner might have expressed anger toward J.S. from the witness stand. Other witnesses were unavailable or problematic. Finally, the State's case against petitioner was strong. Petitioner's DNA was found where J.S. said it would be found, and J.S. identified moles on petitioner's penis. That evidence alone, if believed, was sufficient for a jury to convict petitioner of the charges against him. *See, e.g.*, Syl. Pt. 5, *State v. Beck*, 167 W. Va. 830, 286 S.E.2d 234 (1981) ("A conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible, the credibility is a question for the jury.").

Finally, petitioner asks this Court to review his ineffective assistance of counsel claims under *United States v. Cronic*, 466 U.S. 648 (1984). In *Cronic*, the United States Supreme Court held that prejudice would be presumed if defense "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing[.]" *Id.* at 659. For this presumption, "the attorney's failure must be complete." *Bell v. Cone*, 535 U.S. 685, 697 (2002). Petitioner argues that systemic failures and lawyer turnover in the local public defender's office prevented his counsel from adequately preparing for trial, confronting State's witnesses, or pursuing a viable defense theory for which he and his witnesses could testify. We find no merit to this argument. Petitioner's lawyers interviewed witnesses, investigated the case, cross-examined the State's witnesses at trial, and highlighted discrepancies in the victim's testimony. During the habeas hearing, counsel explained that their trial strategy accounted for adverse evidence and problematic witnesses. Petitioner has not shown that his lawyers entirely failed to subject the State's case to meaningful adversarial testing.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 13, 2023

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn