**STATE OF WEST VIRGINIA**

*In re* **H.S.**

**No. 18-1093** (Marion County 17-JA-171)

**FILED**

**May 24, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.S., by counsel Scott A. Shough, appeals the Circuit Court of Marion County's November 26, 2018, order terminating his parental rights to H.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The child's guardians ad litem ("guardian"), Frances C. Whiteman and Rebecca L. Tate, filed responses on behalf of the child in support of the circuit court's order.[2] On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent and in denying his motion to appoint a separate guardian ad litem for H.S.[3]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Frances C. Whiteman was initially appointed as guardian for the children subject to the underlying petition, H.S and I.T. Petitioner moved for a second guardian for H.S. in April of 2018, but the circuit court denied the motion at that time. After the adjudicatory hearings concluded in August of 2018, the circuit court appointed Rebecca L. Tate as guardian for H.S. upon a finding that she had separate interests from her half-sister, I.T. Frances C. Whiteman was relieved from representing H.S., but continued to serve as guardian to I.T. As petitioner's assignments of error address adjudication, at which time H.S. was represented by Frances C. Whiteman, we find it appropriate to consider both guardians' respective response briefs on appeal.

[3]Petitioner asserts no assignment of error regarding the termination of his parental rights.

1

In December of 2017, the DHHR filed a petition alleging that petitioner sexually abused his step-daughter, I.T. I.T.'s mother and non-abusing father, B.T., shared joint custody of I.T. Further, the DHHR alleged that H.S., petitioner and the mother's biological child, lived in their home as well. Petitioner agreed to leave the home following the filing of the petition and H.S. remained in the custody of the mother. Petitioner waived his preliminary hearing. The circuit court ordered the custodial parents to cooperate with the DHHR and allow the DHHR to make announced and unannounced visits to their homes.

The DHHR filed an amended petition against the mother alleging that she failed to protect H.S. from petitioner "by allowing [petitioner] to reside in the home with [H.S.]" The DHHR alleged the parents inflicted "mental and emotional abuse . . . by their actions leading to [H.S.] hiding under her bed to avoid [Child Protective Services] workers." Petitioner's presence in the home was in direct contravention of a voluntary protection plan the parties executed at the beginning of the proceedings. The mother waived her preliminary hearing.

The circuit court held six adjudicatory hearings over the next seven months. Petitioner's step-daughter, I.T., age twelve, testified and the circuit court found her testimony was "strong and matter of fact regarding particular experiences to which she was subjected. [I.T.] was able to describe, in detail, the manner in which she had been touched and [the] period of time during which such conduct happened." I.T. testified that she referred to her vagina as a "pee-bug" and her breasts as "boobs." According to the circuit court, I.T. described that petitioner "would touch her 'pee-bug' and sometimes inside her 'pee-bug.'" I.T. testified that this happened more than twenty times sometimes when alone in the home with petitioner and other times when both her mother and H.S. were home. I.T. also testified that petitioner licked her "pee-bug" on one occasion while her sister was at school and the mother was at work. I.T. testified that it felt "very disgusting. It scared me. It freaked me out." I.T. testified that she thought petitioner began touching her "in third grade." Further, I.T. explained that petitioner would keep her home from school and touch her inappropriately while they were alone. Additionally, the circuit court found that I.T's father testified that the child "had been absent or late for school on multiple occasions which led to the modification of custody giving [the father] primary custody." The circuit court found that, although the evidence was unclear as to exactly how many times petitioner touched I.T., the description provided was sufficient to indicate that I.T. "experienced this touching in her genital area" on "many occasions."

The forensic psychologist who performed an assessment on I.T. testified that the child's testimony was consistent with their initial session together and the child's forensic interview. The circuit court found that the psychologist "stated that [I.T.] was a child of average intelligence and her actions and statements were consistent with a child that had been a victim of sexual assault." The psychologist further opined "that [I.T.]'s confusion about the number of times that she had been 'touched' by [petitioner was] normal for a child who had been sexually abused for a long period of time." A nurse also testified regarding I.T.'s statements during her examination. The circuit court found that testimony "further shows that [I.T.] has been consistent in her allegations, and has not changed or recanted the allegations made against [petitioner]."

The mother testified in defense of petitioner. The circuit court found that she disregarded the voluntary protection plan as alleged in the amended petition. Thus, the circuit court perceived

that the mother was biased in favor of petitioner and her testimony "did little to detract from the testimony" of I.T. and the forensic psychologist. Petitioner also called two character witnesses, which the circuit court found to be credible. Yet, the circuit court noted that these witnesses also did little to detract from the testimony of I.T. Finally, petitioner testified and denied the allegations that he sexually abused I.T. The circuit court found petitioner was unable to rebut the allegations. Ultimately, the circuit court found "that there [was] clear and convincing evidence that [I.T.] suffered sexual abuse by [petitioner] while in the custody of [the mother] . . . and another child residing in the home was [H.S.]" The circuit court adjudicated petitioner as an abusing parent and H.S. as an abused child. Further, the circuit court found that H.S. had "separate interests from [I.T.]" and appointed the child a separate guardian ad litem.

The circuit court held the final dispositional hearing in October of 2018. The circuit court found that petitioner continued to deny that he sexually abused I.T. The circuit court noted this Court's prior holdings that

> [f]ailure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013). Accordingly, the circuit court terminated petitioner's parental rights by its November 26, 2018 order. Petitioner now appeals that order.[4]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent as insufficient evidence was presented to support this finding. Petitioner contends that the

---

[4]The mother's parental rights were also terminated below. According to the parties, the permanency plan for the child is adoption in her relative foster placement.

sole evidence against him was I.T.'s verbal accusations, which were unsupported by physical evidence or other witness testimony. Petitioner asserts that the circuit court failed to consider this lack of physical and corroborating evidence of the sexual abuse. Further, petitioner argues that the circuit court failed to critically analyze the totality of I.T.'s statements and erred in finding that she was a credible witness. We disagree and find no error in the circuit court's determination, as more fully addressed below.

In regard to adjudication,

"[West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted). Further,

[t]his Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Brown v. Gobble,* 196 W.Va. 559, 564, 474 S.E.2d 489, 494 (1996) (internal citations omitted). We have also stated that the clear and convincing standard is "intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases." *Cramer v. W. Va. Dept. of Highways,* 180 W.Va. 97, 99 n. 1, 375 S.E.2d 568, 570 n. 1 (1988).

*In re F.S.*, 233 W. Va. 538, 546, 759 S.E.2d 769, 777 (2014). Upon our review of the record, we find that I.T.'s statements were compelling and sufficiently detailed to support the circuit court's finding that she was sexually abused. The child gave specific details regarding the abuse, such as locations during specific events. Further, the child explained a pattern of abuse that was corroborated by the testimony of her non-abusing father B.T.; specifically that petitioner would not take the child to school and perpetrate the abuse during that window of opportunity. Although, petitioner emphasizes the lack of physical evidence presented, he fails to recognize that "[s]exual abuse may be proven solely with the victim's testimony, even if that testimony is uncorroborated." *In re K.P.*, 235 W. Va. 221, 230, 772 S.E.2d 914, 923 (2015) (citing syl. pt. 5, *State v. Beck*, 167 W. Va. 830, 286 S.E.2d 234 (1981)). Likewise, "the absence of witnesses to the abuse is not a basis to disbelieve [the child.] It is axiomatic that most sexual abuse of children is not committed in front of an audience." *Id.* at 232, 772 S.E.2d at 925. Therefore, a child victim's testimony alone can be sufficient to form a factual finding that the child was sexually abused, provided the child's testimony is credible.

To the extent that petitioner argues that I.T.'s testimony was not credible, we note that "[i]n reviewing the entirety of the evidence, this Court must adhere to the appellate standard of review set forth above, according significant weight to the circuit court's credibility determinations while refusing to abdicate our responsibility to evaluate the evidence and determine whether an error has

been committed." *F.S.*, 233 W. Va. at 546, 759 S.E.2d at 777. Moreover, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). We do not find that the circuit court's determination that I.T. was credible to be clearly erroneous. As evidenced through multiple witnesses, I.T. was consistent and specific in her allegations against petitioner. Further, the forensic evaluator did not note any indication that the child was coached into making the allegations or otherwise motivated by outside prompting. While petitioner argues that I.T. lacked credibility because she lacked detail in her allegations as to dates of the incidents, the forensic evaluator explained that children of that age are unlikely to remember specific details regarding time. The evaluator further opined that I.T.'s testimony and statements were consistent with her age. Considering the deference provided to circuit courts and their unique position to observe the testifying witnesses, we find no error in the circuit court's determination that I.T. was credible.

We find that the DHHR presented clear and convincing evidence that petitioner sexually abused I.T. We also find no error in the circuit court's determination that petitioner was an abusing parent and that H.S. was an abused child as we have held

> [w]here there is clear and convincing evidence that a child has suffered physical and/or sexual abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of the physical and/or sexual abuse but is at risk of being abused is an abused child under [West Virginia Code § 49-1-201].

Syl. Pt. 2, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995). *See also State ex rel. W. Va. Dep't of Health and Human Res. v. Fox*, 218 W. Va. 397, 624 S.E.2d 834, syl. pt. 4 (2005). It is undisputed that H.S. was a child residing in the home during the time that petitioner sexually abused I.T. Accordingly, the circuit court did not err in finding that H.S. was an abused child.

Petitioner also argues that the circuit court erred in denying his motion for the appointment of a separate guardian ad litem for H.S. Petitioner argues that I.T. and H.S. expressed completely opposite opinions toward him and their desire for contact with him. According to petitioner, then-eight-year-old H.S. believed that I.T. was lying about the abuse. Petitioner argues that Ms. Whiteman focused primarily on the desires of I.T. and excluded H.S., as evidenced by her failure to meet with H.S. until five months after the petition was filed.[5] We find no merit to petitioner's argument. In accordance with the Guidelines for Children's Guardians Ad Litem in Child Abuse and Neglect Cases, which are found in Appendix A of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, a guardian's role during an abuse and neglect proceeding is "both as an attorney, and to represent the best interests of the child." These guidelines grant a guardian "broad discretion in determining what is necessary to protect the best interests of the child" and emphasize that the "safety [and] well-being . . . of a child in an abuse and neglect proceeding are central to all aspects of the GAL's representation." *See* Subsec. A. 1., App. A., W. Va. R. of Proc. for Child Abuse & Neglect Proc. In this case, Ms. Whiteman acted in the best

---

[5]Petitioner provides no citation to the record to support this claim.

interests of H.S. by recommending that she not have visitation with petitioner. Ms. Whiteman interviewed both children and believed that I.T.'s allegations were credible. Ms. Whiteman, therefore, had reason to believe that H.S. was also at risk of abuse. Petitioner's argument stresses that it was H.S.'s "desire" to visit with petitioner and that Ms. Whiteman acted contrary to this desire. However, H.S. was only eight years old and, regardless of her desires, the circuit court is not required to consider a child's wishes unless they are "fourteen years or older or otherwise of an age of discretion as determined by the court." *See* W. Va. Code § 49-4-604(b)(6)(C). Petitioner's speculation that an earlier appointed second guardian ad litem would have recommended visitation is unfounded because it is clear that Ms. Whiteman was acting in the best interest and safety of H.S. Even following the circuit court's appointment of a second guardian ad litem, Ms. Tate did not recommend visitation between petitioner and H.S. Accordingly, we find no error in the circuit court initially denying petitioner's motion to appoint a separate guardian ad litem for H.S considering the circumstances of this case.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 26, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: May 24, 2019


**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison