**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.S.**

**No. 21-0100** (Kanawha County 20-JA-493)

**MEMORANDUM DECISION**

Petitioner Father R.S., by counsel Edward L. Bullman, appeals the Circuit Court of Kanawha County's January 6, 2021, order terminating his parental rights to A.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Jennifer R. Victor, filed a response on behalf of the child also in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in finding that his actions against the child were sexually motivated, constituting aggravated circumstances and relieving the DHHR of its burden to provide reasonable efforts to preserve the family.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2020, the DHHR filed a child abuse and neglect petition against petitioner and the mother following allegations that petitioner was sexually abusing then-thirteen-year-old A.S. The DHHR reported that law enforcement officers had received a report of the sexual abuse and proceeded to petitioner's home to perform a welfare check of the child. At that time, A.S. reported that petitioner "grab[s] her private areas, butt, crotch, and boobs, and that the last time this happened was yesterday." During the investigation, a Child Protective Services ("CPS") worker spoke to the child's paternal step-grandmother, G.B., who reported that petitioner, the mother, and A.S. used to live in her home approximately four years prior and that she and her husband had concerns that petitioner behaved inappropriately towards the child. According to

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

G.B., petitioner appeared to have "more of a boyfriend/girlfriend relationship" with the child and "rubbed against her and didn't want anyone to spend time with her." G.B. reported that she confronted the mother with the concerns and that the mother became angry and told petitioner, who "blew up" and moved the family out of the home.

The DHHR alleged that the CPS worker scheduled the child for an interview at a local Child Advocacy Center ("CAC"). During the interview, the child reported that petitioner "smacked" her breasts when she was both clothed and unclothed. The child further reported that petitioner touched her "poof" above her "hoo-ha" and smacked her on the butt. The child reported that petitioner would not allow her to shut the door while she was using the toilet or taking a shower "for my own safety." The child also disclosed that she and her father roughhoused frequently and that he sometimes made incestuous jokes, which made her feel uncomfortable. The child stated that things had begun to feel different and that her father's touching now felt more sexual in nature than playful.

A preliminary hearing was held in October of 2020. Petitioner advised the circuit court that he desired to waive the hearing, and the circuit accepted his waiver. However, because the mother contested the proceedings, the CPS worker testified regarding the petition and the child's disclosures in her CAC interview. The circuit court ordered petitioner to submit to a psychological evaluation. The DHHR also provided petitioner with parenting and adult life skills classes.

In November of 2020, the circuit court held an adjudicatory hearing, taking judicial notice of the testimony presented at the preliminary hearing. The DHHR further presented the testimony of petitioner. Petitioner admitted to poking the child's "p*ssy poof," an area he described as "just below the panty line." Petitioner also admitted to "flicking" the sides of the child's breasts "to get her to put a bra on" and "smacking her on the butt to wake her up." Petitioner denied that it was a frequent occurrence and stated it only happened once or twice in an effort to get the child to dress appropriately. Petitioner further denied that he touched the child in a sexual manner. He stated, "here's the thing about our relationship: our relationship is more like buddies." On cross-examination, petitioner claimed that he did not poke the child anywhere near her vagina and that it was closer to an inch and a half below her belly button.

Following testimony, the circuit court found that petitioner touched the child inappropriately and committed sexual abuse against her. The circuit court further found that "the way [petitioner] speaks of and talks about his behavior with his daughter, aside from the conduct, is totally inappropriate." Accordingly, the circuit court adjudicated petitioner as an abusing parent.

The circuit court held a dispositional hearing via a videoconferencing platform in December of 2020. Petitioner failed to attend but was represented by counsel. A CPS worker recommended terminating petitioner's parental rights. The CPS worker testified that petitioner displayed erratic behavior during the case, failed to accept responsibility for any allegations in the petition, initially "participated somewhat" in parenting classes, and made inappropriate comments to the female service providers. The worker noted that CPS attempted to switch the services to a male service provider and petitioner did not comply with that worker either. The CPS worker opined that there was nothing to indicate that petitioner could correct the conditions of abuse or neglect in a reasonable timeframe, nor could she provide any services to assist him. The CPS

worker also testified regarding petitioner's psychological evaluation, which gave him a poor prognosis for attaining minimally adequate parenting due to a history of dysfunctional and volatile interpersonal relationships, emotional dysregulation and reactivity of mood, anger dyscontrol, a history of verbal and physical aggression, a history of homicidal ideations, a history of suicidal ideations, poor judgment and insight, an extensive history of legal involvement, denial and minimization of the referral concerns, and hostility and aggression in interactions with the professionals involved in the case.

Following testimony, the circuit court found that petitioner continued to deny abusing the child. The circuit court noted that it previously adjudicated petitioner on the basis of sexual abuse, constituting aggravated circumstances, and that as a result, the DHHR was not required to provide services designed to reunify the family. Nevertheless, the DHHR provided remedial and reunification services to petitioner including parenting and adult life skills classes and a psychological evaluation. The circuit court found that the psychological evaluation indicated that petitioner's prognosis for attaining minimally adequate parenting was poor. The circuit court further found that petitioner failed to adequately comply with other services and behaved inappropriately towards the service providers. Based on the foregoing, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse or neglect in the near future and that termination was necessary for the child's welfare. Petitioner appeals the January 6, 2021, dispositional order terminating his parental rights.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in finding that his actions were "sexually motivated as opposed to admittedly inappropriate." Petitioner contends that there was no evidence that petitioner sexually abused or exploited the child. Rather, petitioner claims that he

---

[2]The mother is participating in an improvement period. The permanency plan is reunification with the mother pending the successful completion of her improvement period. The concurrent permanency plan is adoption.

"acted inappropriately and needed to learn how to act around a young girl coming into puberty." Petitioner states that he needed to recognize that he was a father figure and not the child's "buddy." Petitioner points out that the child also saw their relationship as playful as she joined in on the jokes about incest, as well as smacking the father on the groin and nipple. As such, petitioner stated that the child was not sexually exploited or abused, but simply engaged in horseplay and joking with the father until she matured to the point that a change in dynamics was warranted. Petitioner states that he was "becoming more aware of the change in his relationship" with the child and expressed his willingness to adapt and modify his contact. Petitioner states that he should have been given the chance to demonstrate his ability to change.

At the outset, we note that petitioner briefly states that the "change in the dynamic of the relationship should have been explored and dealt with between father and daughter without removal and termination of parental rights." To the extent that petitioner argues that the allegations of abuse in the petition were insufficient to justify the removal of the child, we note that petitioner waived his preliminary hearing. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). As such, this argument will not be considered on appeal.

Regarding adjudication, we have previously held that

> [a]t the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id.* at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted). Further, West Virginia Code § 49-1-201 defines "abused child" as "[a] child whose health or welfare is being harmed or threatened by . . . [a] parent . . . who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home." Also,

> "[West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

4

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted).

Here, the circuit court found that the DHHR presented clear and convincing evidence that petitioner sexually abused the child. During the CAC interview, the child disclosed that petitioner smacked her breasts and butt while she was both clothed and unclothed and that he pokes the area above the vagina and says "p*ssy poof." The child disclosed that this touching had occurred since she was a young child and that it made her uncomfortable as it had become more sexual in nature. The child further reported that petitioner makes incestuous jokes, which also made her uncomfortable. Petitioner's testimony also demonstrated that this sexual touching occurred. Petitioner admitted to flicking the child's breasts, smacking her butt, and poking her "below the panty line." While petitioner denied that the touching was sexual in nature, the circuit court considered his testimony in conjunction with the child's disclosures and ultimately determined that petitioner sexually abused the child. Importantly, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Moreover, "[s]exual abuse may be proven solely with the victim's testimony, even if that testimony is uncorroborated." *In re K.P.*, 235 W. Va. 221, 230, 772 S.E.2d 914, 923 (2015) (citing Syl. Pt. 5, *State v. Beck*, 167 W. Va. 830, 286 S.E.2d 234 (1981)). As such, we rely on the circuit court's ultimate conclusion that A.S.'s disclosures were credible and that petitioner's actions constituted sexual abuse.

To the extent that petitioner argues that he was denied reasonable efforts on the basis of a finding of sexual abuse, we find no error. The record reveals that despite the aggravated circumstances present, petitioner was provided remedial services such as parenting and adult life skills classes and a psychological evaluation. However, petitioner failed to adequately comply with services and made inappropriate comments to the female service providers. After a male service provider was assigned to petitioner's case, petitioner still failed to comply with services. Accordingly, we find no merit in petitioner's argument that he was somehow prejudiced by a finding of aggravated circumstances as he was provided services despite this finding and nevertheless failed to comply with them.

We likewise find no error in the termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d)(3) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

*Id.*

The record establishes that petitioner failed to follow through with rehabilitative efforts designed to reduce or prevent the abuse or neglect of the child. As noted above, petitioner was provided services such as parenting and adult life skills classes and a psychological evaluation. However, petitioner failed to participate in services, made inappropriate comments to the workers, and ultimately failed to appear at his dispositional hearing. Petitioner was hostile towards the CPS workers and all parties involved and stated that he refused "to jump through hoops . . . and I refuse to kiss *ss to see her." Further, petitioner's psychological evaluation indicated that his prognosis for attaining minimally adequate parenting was poor in part due to his poor judgment and insight, as well as his denial and minimization of the issues of abuse and his hostility and aggression in interactions with those involved in the case. Lastly, petitioner denied responsibility for his actions and blamed the CPS workers for the situation, calling them liars.

This Court has previously noted that "[f]ailure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable. *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Moreover,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given petitioner's failure to address the issues of abuse and neglect despite the provision of services below, we find that the circuit court did not err in terminating his parental rights.

Lastly, because the proceedings regarding the mother remain ongoing, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the dispositional order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be

strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 6, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: June 22, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

7